UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CIVIL NO.

3-01-CV-1490-(JCH)

DATE. MARCH 15, 2006

CHARLIE J. McCLENDON

V.

THE STATES OF CONNECTICUT

THE PETITIONER MEMORANDUM IN

CONJUCTION WITH THE ISSUES

TO BE ARGUED BY

CHARLIE J. McCLENDON

## THE NATURE OF THE PROCEEDINGS

The defendant was charged in an eight count information with having committed the following offenses: Count I - capital felony, Conn. Gen. Stat. § 53a-54b(8); Counts II & III - felony murder, Conn. Gen. Stat. § 53a-54c; Counts IV & V - murder, Conn. Gen. Stat. § 53a-54(a)(c); Count VI attempted first degree robbery, Conn. Gen. Stat. §§ 53a-49(a)(2), 53a-134 (a)(1)(2) & (4); Counts VII & VIII first degree robbery, Conn. Gen. Stat. § 53a-134 (a)(2) & (4).  Following a jury trial in the Superior Court for the Judicial District of Hartford-New Britain at Hartford, Koletsky, J., the defendant was acquitted of the capital felony and intentional murder charges and convicted of all other counts.  On February 19, 1993, he was sentenced to a total effective sentence of 140 years imprisonment.  ST 52-54.

## THE FACTS OF THE CASE

Shortly after 4:40 p.m. on Tuesday August 11, 1987, a black male entered C & K Moving Company, located at 211 Walnut Street in the North End of Hartford.  1T 400.  The intruder robbed the receptionist Darlene Hale Kelley[1] at gun point.  1T 177, 408-09.  He then shot and killed employee Grayland Cannon and company owner Dennis Shortell, while attempting to rob them.  1T 178-79, 411-14.

Minutes before the shootings Hale had given an employment application to a black male whom she described as 5'6" to 5'7" tall, weighing 150-165 pounds, with a pock marked or razor burned face and a thick, bushy, black mustache.  1T 164, 420, 471-75; 2T 549.  The man definitely did not have a scar of any sort on his face.  1T 473; 2T

---

[1]  The witness married between the time of the incident and trial.  All further references to her use her maiden name.

1

575. He was wearing an unbuttoned blue dress shirt, with rolled up and tinted gold or brown glasses with metal rims. 1T 420. Altogether Hale saw this man for 30 seconds to a minute. 1T 173, 453. The full extent of the conversation she had with him was an affirmative response to his inquiry, "Do you have an application for employment?" 1T 453, 455. There were no distinguishing features to the man's voice. 1T 458; 2T 575. His voice was "very even, no accent. Soft spoken. Didn't yell." 1T 419.

As she was handing over the application, Shortell called Hale into his office and instructed her to make a call. She returned from his office, placed the call, and had just hung up the telephone when a man came up behind her, put a gun to the left side of her head and demanded money. 1T 406-08. Although she never saw the robber's face, (1T 209, 409), Hale identified the rolled up blue shirt sleeves on the man's arms as the same as those she had seen on the man to whom she had given the application. 1T 173. She also claimed to recognize the voice as that of the applicant. 1T 174, 420.

Police had great difficulty calming Hale and eliciting information from her. She was seven months pregnant, (1T 179, 413), "hysterical, crying and frightened." 2T 530. That same evening Hale looked through a series of photo books and worked with the police to assemble an identi-kit composite of the suspect. 1T 182, 425-27; Ex. R. The next day she directed a police artist in the drawing of a sketch. 1T 184, 428-29; Ex. S. At trial Hale insisted that the identi-kit composite was a "fairly accurate" rendition of the suspect and the police artist's sketch was as close a likeness as she could summon. 1T 483-85; 4T 1863.

The defendant was virtually an immediate suspect, due to his August 13, 1987, arrest for other offenses committed in the North End. At that time police described the defendant as a black male, 5'6" to 5'7" tall, weighing about 150 pounds, with a pock marked complexion and a clearly visible scar on his cheek. 2T 625. Two different pictures of the defendant were purposefully included in photo arrays that were shown to Hale once on August 12 and twice on August 14, 1987. 2T 579, 583, 585. Hale was instructed to look carefully at the photos and to take her time reaching any conclusions. 2T 582-83, 586. All three times Hale failed to make an identification, telling police on August 14th, "the man's not in this array." 2T 585; 2T 624; 628; Ex. 2.

Hale was unable to remember whether she had further contact with the police during 1987. She estimated she was shown photo arrays seven or eight times over the course of the next two years, and never made an identification. 1T 489. In the spring of 1989, Hale was contacted by Detective Faggiani, who had recently taken over the investigation. Faggiani showed her another array and asked her to make an identification. Again she was unable to do so. 1T 187-88, 434. Hale "was asked if saw this person again would I be able to recognize them and I said yes, I would." 1T 188; 492D-E. On September 15, 1989, Hale viewed a line-up consisting of five Hartford police officers and the defendant. 1T 189; 2T 634-638; Ex. GG (video-tape of line-up). She positively identified the defendant by looks and voice at the line-up, and by looks at trial. 1T 244, 247, 440; 2T 639. Hale insisted she had "absolutely not" seen the person she identified at the line-up in any of the photo arrays she had viewed over the course of the past two years. 1T 194, 189; 2T 491.

Immediately thereafter, some two years and one month after the incident, the police secured an arrest warrant charging the defendant with the instant offenses.  App. 3A.

### ARGUMENT

CLAIM ONE: <u>THE TRIAL COURT, THE APPELLATE COURT AND THE STATE</u>
<u>SUPREME COURT, DENY THE PETITIONER'S HIS FEDERAL CONSTI-</u>
<u>TUTION.RIGHTS, TO SUPPRESSED. On the grounds, the search</u>
<u>and seizure warrant authorizing the line-up and voice</u>
<u>simple of the petitioner's and the identification pro-</u>
<u>ceduers employed was unnecessary suggestive</u>.

    **1)**. The petitioner's moves, to pursuant to the Four, Five
and Six Federal Constitution, to suppressed Darlene Hale identi-
fication of him, challeging the Constitutionaity of the search
and seizure warrant authorizing the line-up, and voice simple. He
also challenge the suggestiveness of the identification,but the
State Supreme Court did not certify that issue for review.

**A.** **<u>The trial court's finding and conclusion</u>**. Relying on the searc
search and seizure warrant, the Court's found that Darlene Hale,
have preiously gaven a very detailed description of the perpetrat
tor, had adquate opportunity to view the suspect at the time of
the incident, and had been unable to effect an identification
from photos arrays, based on these finding the Court's concluded
that, assuming arugendo a warrant was required ( **A finding the**
**Court's declined to make )** the affidvit and the application for t
the search and seizure warrant established probable cause to
tranport the petitioner's from the status as an incarcerated pris
soner or sentence prisoner for the purposes of a line-up and voic
voice simple.

1

**B. The suggestiveness of the identification procedure.** The Court
ruled the line-up identification procedure was not unnecessarily
suggustive, and that even if it was, the identification was never
the less reliable. So the Court's finds that there is nothing un-
duly suggestive in the line-up or any of the activities that led
up to the line-up. And if the Court's were to go on the second ph
phase of that-- of the issue, the Court's would find that the
identification in the totality of the circumstance is enormously
reliable.

A&. **The Appellate Court review:** The Appellate Court agreed, and
concluded that, in this case, we conclude that the affidavit pre-
sent a substandtial factual basis to support the Court's con-
clusion that probable cause for the line-up and voice simple ex-
isted. The police offier affiants attested that Hale gave a deta
tailed description of the person who requested the employment app
application and she had the opportunity to see the person clearly
On the bases of Hale's description of the gunman and the ident-
ification of the composite as the defendent by another robbery
victim, and justifying Hale's inablity to identify the gunman fro
from photoghaph arrays because the photographs did not show the
potential perpetrator wearing sunglases, the issuing judge could
reasonable have inferred that probable cause existed.

**B. The suggestiveness review:** In this case, Hale had ample opp-
ortunity to see and to hear the robber. She had a high degree att
ention and was face-to-face with the defendent, and her descrip-
tion of the perpetrateor at the time of the incident was quite -

2

detailed. Hale also demonstrated certainty in identifying at the line-up. Furthermone we cannot assume that the two years period between the identification and Hale's viewing of the defendent was so long as to render her ideniification unreliable. Under these circumstance, the trial Court's properly concluded that the idenification procedure was not so suggestive and unreliable as to violate the defendent's right to due process.

**A. The State Supreme Court review:** In the present case, we conclude that the affidavit presented a factual basis to support the Court's conclusion that probable cause for the line-up and voice simple existed. the affiants attested that Hale gave a detailed description of the man who had requested the employment application, and that she had the opportunity to see that man and speak with him. The police developed a composite sketch with Hale's assistance. Spillane, the victim of another robbery, told the police that the composite resembled the man who had robbed the service station on August 7, 1987, and that he had a scar on his left cheek. Spillane's co-worker, Rodriguez, confirmed her identification by recognizing, in a photographic array, the defendent as the robber of the service station. Hale stated that she could not identify the ganman from the photographic arrays because he was wearing eyeglasses at the time of the shooting, and the defendant was not wearing eyeglasses in any of the photographs. Hale did not believe, however, that she could recognize the robber's voice and his face if he were to wear eyeglasses. Hale stated that she could identify the robber if he wore eyeglasses -

and she heard his voice, conditions that had not and could not prevail in the previous photographic identification attempts. In light of Hale's compsite sketch, which was identifyed as the defendent by another robbery victim, the issuing judge  reasonably could have inferred that probable cause existed to conduct the line-up with the defendent particpating and a voice recording of the defendent. We cocclude that probable cause was established for the police to obtain further evidence concerning the robbery and murder.

The State Supreme Court did not review the suggestiveness issue.

**The Trial Court, The Appellate Court and The State Supreme Court decision resulted in Contrary to Federal established law, in ruling on the suppression motion and motion to suppress identification.** In the Petitioner's motion to suppress, and motion to suppress identification, dated April 23, 1990. The Petitioner's argue to the trial court's for an order to suppress as the fruit of illegal search and seizure under the Federal and State constitution. The trial Court's, relying on the search and seizure warrant, was contrary to, Federal law, and unreasonable. First, trial Court,s gave his own opinion about the petitioner's looks, **T.367 The Court's ■** That doesn't look anything like him at all it totally obliterates the quite distinctive facial marking that Mr. Mcclendon has as he sits here before me."

4

Trial Court's was also unreasonable determination of facts in light of the evidence presented in State court proceeding. When and after an police offier testify that he shown Hale photos of the Petitioner's in july of 88. **T. 375 The Court's** " But the fact pattern there, where a Circuit Court of appeals found the conviction should be overturned on a habeas track, the conviction-- or the idenification procedures there were just enormously more suggestive than what we have here, but no, I don't find that C, which says July of 88 on the outside of the enverlope, was indeed shown to Ms. Hale until 1989. I think had it been there might have been an ID. But in any event it wasn't." The Court's also stated, **T. 376 The Court,** " It's not important to my decision because the picture doesn't look anything like the complexion of Mr Mcclendon. But yes. I didn't make the finding, but you're certain entitled to the finding, and there's no question that that happened. What didn't happen, at least as I view the evidence, is that the photo array that's in as defence C, the Court finds was not shown to Ms. Hale in the Fall of 1987 or Summer and Fall of 1987, " The Court,s was unreasonable to the evidence at the trial. **Williams V. Taylor**, **529 U.S. 362 at 412.** **Jones V. Stinton** **299 F.3d 112 at 119.**

Trial Court's did not aplyed Federal Constitution laws, to his decision, the Petitioner's argue, and cited Federal laws and Federal citing. The Court's also declianed to make a decision, and when he did, it was three years and three days after the petitioer's was sentence.

The trial Court's decision was Contrary to, Federal established law. Under the Antiterrorism and Effective Death Penalty Act of 1996 ( hereinafter, "AEDPA" ) became effective April 24, 1996. AS part of this Act,28 U.S.C § 2254(d) was amended to read as follow:  (d) An application for a writ of habeas corpus on be-half of a person in custody pursuant to the judgment of the State Court shall not be granted with respect to any claim that was ad-judication on the merits in State Court proceedings unless the adjudication of the claim- **(1)"** Result in a decision that was contrary to, or involved an unreasonable application of, cearly established law, as determined by the Supreme Court of the United States;" Or  **(2)"** Resulted in a decision that was based on an un-reasonable determination of the facts in light of the evidence presented in the State Court proceeding.■   The Petitioner seek to suppressed on this ground, and grant him a new trial.

The Appellate Court also was unreasonable, and contrary to, Federal established law. From the Appellate Court decision, take the same tone as the trial Court's. The Petitioner's cited Fed-eral, and State Constitution, in his Appellate Court brief, on the issue of suppression motion, and motion to suppress identifi-cation. The Appellate Court did not analyzed the issue under the Federal Constitution, only under the State Constitution, the re-cord is clear on this. The petitioner's seek to suppressed on this ground, and ask the court to grant him a new trial..

6

The State Supreme Court, was also unreasonable, and contrary to Federal established law. The State Supreme Court relyed on the trial Court's decision and no the Appellate court decision. The Petitioner's brief to the State Supreme Court, was under the Federal Constitution, and under the State Constitution. The Petitioner's requested, State Supreme Court to review the  issues of his motion to suppress, and motion to suppress idenitification, under the Federal Constitution. There was no analyzing from the high court under the Federal Constitution. T he State Supreme Court, just literally repeted what the Appellate Court stated. Never analyzing the issues under the Federal Constitution. this is cearly unreasonable, and contrary to Federal established law. The Petitioner's seek to suppressed the line-up and voice simple of him, and request a new trial. **Williams V. Taylor**, 529 U.S. 362

A. **The petitioner's was illegal seizure on a warrant that was based on a hunch rather than objective facts constitution probable cause.** The warrant authorizing the line-up and voice simple can not pass must under the Four, Five and Six Amendments to the United States Constitution. To central role to statutory safeguards is implementing the Federal Constitution right of personal liberty, is obviously a _valid_ warrant that established probable cause to seizure the Petitioner's for the line-up, and voice simple purposes, because the warrant at issue wholly failed to establish probable cause. this case present the functional equivlent of warrantless seizure the Petitioner's.

It's well settled that s seizure for a line-up purpose transcends parmissmble belief investigation detention and must be supported by probable cause or a warrant, **Hayes V. Florida**, 470 U.S. 811. **Terry V. Ohio,** 392 U.S. 1. Since the warrant here filed to establish probable cause, it was COnstitutional defective, and the re sulting seizure was illegal. T he Petitioner's argue at trial, the warrant authorizing the seizure never got beyound a mere hunch.

After reciting the facts surrounding the death of Shortall and Cannon, the affidavit warrant set fort Hale generlized intial description of the suspect. It follow with information detailing the Petitioner's arrest on unrelated charges for offence occurring in the same area of the said incident, after one of the vivtim in an unrelated offense was shown Hale generalizes description of the suspect, stated, the person who robb him bore a resemblance to Hale fashion sketch when police learned that the perpetrator in the unrelated offense had a large scar running from the top of the person fourhead, down to the person face, photo of the Petitioner's was shown with other. The vitvim of the unrelated offense identified the Petitioner's as the perpetrator who robb him on August 7, 1987. It then states that Hale was also then shown a photo array with the Petitioner's photo, but filed to identified the Petitioner's. Almost two years and on May 18, 1989. the affidavit stated informed Detective Faggiani that she remained really unsure if she could identified the male she gave the emploment application to on August 11, 1987.

8

On june 16,1989 Hale met with again the police and prosecutor and stated that if she heard the same voice she might beable to identified the shooter.It then concludes on a hopeful note; "A line-up viewing and voice sample of Charlie James Mcclendon may produce a postive ientification"

N othing in this warrent establish any cause to believe that the petitioner was the C&K perpetrator.It plainly stated,this was a fishing expedition at best.The olny description of the killer was generic.there is no description of the other unrelated crimes from which to conclude if the petitioner did other,he did this crime.GIven the deficiencies in the affidavit,a substantial factual basis upon which the magistrate could conclude that probable cause existed was clearly lacking here.

"Close enogh is not good enough"probable cause to seach requires more then a reasonble beliefthat the item tobe seized will be found in the place to seach,also required is a resonable brief that theitem ot be seized are"Connected with criminal activity" U.S.V Delmonoco 469U.S.1036(1984)The"Nexus"require between the item tobe seized(The petitioner person and voice sample),and criminal behavior was clearly not established under the focts presents here.Warder v Hayden,387 U.S.294(1967)

9

There wasnot no credible substantiated information from which to infer that the petitioner was the C&K perpetrator. Just because he had been arrestd for three unrelated robbery is not a reson to believe he did the said incident.

The line-up identification made by Hale and introduce at trial was the result of an illegal seizure effected pursuant to a defective warrent and should have been suppressed as poisonous fruit of an illegal seizure.**Wongsun V. U.S. 371 u.s. 471.**

If a warrent affidavit do not provide a substantial basis for the finding of probable cause,then the evidence or contrabond seizure in the exercution of that warrent will be suppressed even when the officer exercuting the warrent in good faith upon its authority,**Wong Sun V. U.S. 371 U.S.471(1963)**

C.<u>the Identification Proceducre Was Unnecessarily suggestive</u> <u>And Was Not Reliable</u>.Hale ientification of the petitioner was tainted by suggestive procedures and was not reliable.There can be no doubt that inaccurate eyewitness testimony may be one of the most pedjudicial fectures of a criminal trial.."while juires may be led by their experience to believe their eyes,and by inference,what they hear from those they have seen,that eyewitess testimony may sometime be at least trustworthy means to identify the guilty,<u>Harper v. Kelly</u>,916 F.2d 54(1990),<u>Kompshoff v. Smith</u>, 698 F.2d 581(2d cir1983)

**The procedures Was Unnecessarily Suggestive** An identification
procedures is unnecessarily suggestive only if it gaves rise to
a very substantial likehood of missidentification. Cearly that
standard was not met here. The only face saw in the line-up was
the petitioner and oc couse that was through repeated exposure to
it over a course of two years. "Suggestiveness can be created in-
tentionally or untentionally in many way" **United Stases v. Wade**
388 U.S. 218(1967)


The recurrence of the petitioner photos was shown to Hale over a
course of two years,antil she identified the petitioner. The taint
cannot be purged especially here when Hale admitted her abilty to
recognize the petitioner where a long time have have passed since
the incident. It is undisputed that Hale saw the suspect for only
30 seconds to a minutin,while her memory was still fresh she
fashioned a composite and sketch,both of which she continued to
insist were accurate depitions of the suspect.


The voice identification is equally flawed as well. Its strains
credulity to be believe that any one could identified voice over
two years,,only heard for 30 second to a minute,Hale stated the
voice was soft spoken and unremarkable.

**D. The identification was not reliable,** The question reliable is a mixed question of facts and law, **Dickerson V. Fogg,** 692 F.2d - 238, which is not entitled to a presumption of correctness. It must be exaimined " with exceptionly close scrutiny " application of this standard leads ineluctable to the concludsion that the curruping effective of the suggestive procedure. **Manson V. Braithwait,** 432 U.S. 98.

Hale, identification was not sufficiently reliable to be admissable. First, Hale, 30 second to a minute opportunity to view the suspect, was colored by hysteria and fear. " Opportunity to form a accurate mental picture was impaired by the tension of the momont " **Dickerson V. Fogg,** 692. F.2d at 245. The entire time of the incident Hale, remained facing the wall and never sew the assailant, " attention to the event frequently must be distinguished from attention to the assailant " **Solomon V. Smith,** 645. F.2d 1179. This was not a case where there close and protracted personal observation of the assailant by the victim witness.

The two years idenification of the Petitioner's was unreliable, **Marsden V. Moore,** 847 F.2d 1536. **U.S. V. Emanuele,** 51 F.3d - 1123. An eyewitness " si only able to reture the sparpest image of the suspect only for a few hours " **Dickerson V. Fogg,** F.2d at 247. **Chavis V. Henderson,** 638 F.2d 534 at 537.

The Petitioner's seek to suppress the evidence, and request a new trial.

12

CLAIM TWO: <u>THE TRIAL COURT, AND THE APPELLATE COURT, DENY THE</u>
<u>PETITIONER'S HIS FEDERAL CONSTITUTION RIGHTS. THAT THE</u>
<u>PROSECUTION'S SUPPRESSION OF DETECTIVE FAGGIANI'S EX-</u>
<u>CULPATORY POLICE REPORT REQUIRE A NEW TRIAL.</u>

The Petitioner's moves, pursuant to the FIve, Six and Fourteenth, Federal Constitution. Challenging the Constitutionaity of the Prosecution's suppression, of a Detective Faggiani exculpatory police report.

Proor to the beginning of the October 31, 1989, probable cause hearing, the Court's granted the Petitioner's motion for preli- minary disclosure and production to compel proceeded of potenti- ally discoverable materials. The hearing proceeded and Darlene hale identificatified the Petitioner's in-court as the person she pick out the line-up on September 18, 1989, as the C&K perpetrat- rator.

Hale was certain of her identification and insisted she had no doubt about its accurary. Detective Omicienski testifiied at the probable cause hearing, when asked wheather hale, had ever stated she would not be able to identified any one, the Detective, test- ified, to the best of his knowledge, " He could not recall hale, saying she would not be able to identified the person whom per- petrated this crime " the Court's foind probable cause, and the case preceeded to trial. The Petitioner's continued to seek dis- cover of exculpatory information. The evidentiary portion of the trial commenced on NOvember 18, 1992, five days in to the State's case, after Darlene Hale han testified in front of the jury

13

On november 25,1992 the state disclosed an exculpatory police
report,written by Detective Faggiani,in that report Faggiani,
who had died a year and a haalf to two years before the November
1992 trial,but at least a year after the 1989 probable cause
hearing related that"Ms.Hale wasmade awear that an arrest was in
sight concerning said incident and that she have nothing to fear
from the suspect (The Petitioner)since he is currently incar-
cerated for other crimes,Ms.Hale stated she did not see the
culprit at the time of the robbery/murder she would not beable to
make an identification,Ms.Hale,stated it was a <u>assumption</u> on her
part that the black male who enter minutes before was the same
one responsable.Ms,Hale,stated she based this on partial clothing
observed on the culprit at the time of the incident.Hale stated
after the first male left,after receiving a job application, she
was seated at her desk,that she felt what appered to be a gun to
her head,that a black male then order her to not turn around,that
it was at this time,that she observed a arm of a black male,that
she recalled a light blue shirt with the sleeve being long,that
the sleeve were rolled-up two to three time.Ms.Hale stated that
she was seven months pregant,at the time and scared,thats all she
really remember was the gun to her head".

Base on this tardy disclosure the petitioner had move for a
mistrial.The trial court found the Faggiani police report to be
exculpatory,but rule the prejudice was minimal.

**A.** **The Prosecution's Suppression of Detective Faggiani excul-**
**patory police report, require a new trial.** On October 31, the
Court's granted  the Petitioner's motion for preliminary dis-
closure and production and to compel perservation of potentially
discoverable materials between the probable cause hearing, and
the November 1992, trial, the Petitioner's continued to seek dis-
covery of exculpatory information. Three years, and one month
after the probable cause hearing, on November 25, 1992, after the
State chief witness had testified at the Suppression hearing, and
in fort of a jury, the prosecution's disclosed the Faggiani pol-
ice report. The trial Court's ruled the Faggiani police report to
be exculpatory, but ruled the prejudice to be minmal, and ordered
the State's to return Hale for further question. Pursuant to the
Court's order, the State's brought Hale back for further cross-
eximintion. Upon returning, Hale denied Faggiani, had ever told
her an arrest was insight, and insisted she did not tell Faggiani
that because she did not see the culprit face, she would not be
able ti identified him.

   Exculpatory evidence must be disclosed at a time in which it
can be effectively used. The Faggiani, exculpatory police report
was favorable to the Petitioner's. **Brady V. Maryland**, 373 U.S. 83

Detective Faggiani,was the chief investigator of the case since may of 1989,four and a half months befor the petitioner,was arrested for the said incident.By the time the Faggiani police repoty was disclosed,he was dead.With out the knowleged of this exculpatort police report,there was no reason to called Faggiani to the stand at the probable cause hearing for a defence witness to impeachment.It cear he was alive at least a year after the probable cause hearing.The trial court had all ready ruled on the petitioner motion to suppressed and the motion to suppressed identification.

The state baldly asserts that,"The trial court never know,either before or after it ruled,that the petitioner in fact had the Faggiani police reportbefore the date on which he claimed the state had first disclosed it",This a grossly inaccurate distort-ion of the recordwhich only can br explained as wishful thinking on the state part.Despite the state attempts to obfuscate,the record upon which the petitioner properly relied,both at trial and on appeal is clear and unequivocal.

The obvious and unmistakable implication of this novel and newly raised state claim is that the petitioner lied and deceived the the trial court in moving for a mistrial on non-discloseure grond when they knew these grounds to be false.

The state claim is both outrageous and offensive,more over,the Appellate Court ruled the prosecution had this report,but the petitioner had the report to.

The is clear this Faggiani police report was turnover on November 25,1992.The Appellate Court misunstood when the petitioner was reading from the warrent affidavit authoring the line-up and voice sample.The Faggiani police report,Exculpatory police report have toldly differant information that was fovorable.

**The Court** All right,you've had chance to read the motion for
          a mistrial

**Mr.Malone**(The Prosecutor) Yes your honor.

**The Court** All right,And I take it,it is stipulated that exhibit 1
          to the motion for mistrial,a piece of information that
          was not disclosed to the defendant nutil wendensday
          of last week?

**Mr.Malone**(The Prosecutior)Thats right,thats correct,your honor.

The exculpatory Faggiani police report was favorable to the petitioner.Hale was the only witness to identified the petitioner and Hale odentification came over two years and one month after the incident,after she fail to pick ouy the petitioner photos array,over the course of two years."It is well seatablished that IMpeachment evidence as well as exculpatory evidence falls within **Brady v. Maryland** 373 U.S. 83(1963)

If the Petitioner's had been able to " Bolster " Hale, intial failed identification with the 1989, statement that Hale continue to believe she would beable to identification the perpetrator and had an " **Assumption**," that the same person whom came in for the job application, was the same person whom robb C&K. **Ohler V. U.S.** 529 U.S. 753. (2000), **U.S. V. Cuffie**, 80, F.3d 514. **Carter V. Bell,** 218 F.3d 581 ( 6th Cir. 2000).

**The trial Court's ruling:** The court's, T. 789. All right, I find that Exhibt 1 is exculpatory. I find that the predudice to be minimal, but to clear any prejudice I will order the prosecution upon the defence request to have Ms. Hale, in court for a reopening of cross-examination. If the defese does not request it I will obviously not order it. The request should be made within forty-eight hours enough time.

**The Appellate Court ruling:** It is clear from the facts in this case that Hale's statement contained in the Faggiani, report was not made available to the defendent until after the probable – cause hearing, but was avilable to the defendent before before trial. It is also clear that Hale's statement was favorable to the defense. The critical issue, therfore, is to determine if the nondisclosed evidence was materal. We conclude that the evidence was not material because we are not persuaded that the outcome of the probable hearing would have been different had the Faggiani, report been disclosed.

**Appellate Court continue:** The facts in the Faggiani report are
consistent with the facts set forth in the affidavit present to
the Court's in the search and seizure warrant. The affidavit
stated in relevant part: On May 18, 1989, Hartford Police Depart-
ment Detective Ronald Faggaini spoke to Darlene Hale, re identi-
fication. She informed him that she is really unsure she could
identified the male she gave the employment application to on
August 11, 1987, before the murder occurred. " The defendant,
therefore, already had information that would have allowed him to
question Hale at the probable cause hearing on the report con-
flict between her identification of the defendant in court and
her inability to identified the defendant in her statements to
the police. Furthermore Hale had consistently stated before and
during the trial that she had not seen the robber's face during
the robbery and shooting, but recognized the color of the shirt
he was wearing and the way in which his shirt sleeve was rolled
up as being the same as the man who requested a job application
minutin before the robbery. On the basis of these facts, we con-
clude that the defendant failed to demonstrate that the Faggaini
report was materal

  **The Appellate Court review of the hearsay rule, on Faggaini
police report.**The trial Court's also found that the hearsay was
mis-leading because, in the context of the entrie report the
statement does not mean what it appears to say althouhg Faggaini,
reported yhat Hale could not idenify thr gunman, he also report-
ed, that Hale recognized the gunman's rolled-up shirt sleeve and
arm as that of the black male to whom she had given a job appli-
cation minute before.

19

**Continue:** These statements are contradictory and render the report mis-leading and unreliabl. We conclude that the Court's properly excluded the Faggaini report.

<u>The State Supreme Court review; of the hearsay rule, on the issue of Detective Faggaini exculpatory police report, but did not hear the issue, on exculpatory police report.</u> The State Supreme Court: The statement was contradicted by the evidence present at trial and was not corroborated by any other evidence. The trial Court's was therefore correct in concluding that the report was not reliable.

<u>The Trial Court, The Appellate Court And The State Supreme Court Decisions, was Contrary to, Federal Established Law, And Unreasonable In Determination of The Facts In Light Of The Evidence Present in The State Court Proceeding.</u> First, the trial Court's decision was contrary to, Federal established law, The Petitioner's argue at trial, under the Federal Constitution. And cited Federal citing, as well as State Constitution. The Petitioner's just previously argue, the motion to suppress, and motion to suppress identification, when the State's disclosed the Faggaini, exculpatory police report five days into the testimony of the trial. The Petitioner's could have used this information in the suppression motion hearing. **Brady V. Maryland,** 373 U.S. 83. In motion for a mistrial, the Petitioner's cited Federal Constitution.

Also in the hearing for the mistrial, the Petitioner's relyed on **Brady V. Maryland,** 373 U.S. 83. The court's, at the motion for a mistrial hearing, shown contrast between the Faggaini exculpatory police report, and application affidavit. T. 784. <u>The Court's</u> " Well, I just wondered how far after. Because the Faggaini affidavit talks about a June 16 meeting at which Assistant State's Attorney Malone was present. And there's no mention of that in this report.( Faggaini, exculpatory police report )  Well, it seems to me that you confronted Ms. Hale on cross-examination with paraprases of the warrant affidavit, and both times she was quite firm that she never told the police officers that she was unsure if she could make identity. She said if I see him I'll know him. And she said that in the motion and then she said that in--before the jury. So I guess I need you to explain for me why you think it would have been different had you asked--didn't you tell Detective Faggaini that you were just making an assumption that the person who held the gun to your head was the person who got the application. "  It is clear from the trial record that the Petitioner's did not have this information befor trial or the probable cause hearing. The trial Court ruling was contrary to Federal established law, and the Court's decision was unreasonable applied to the princple to the facts of the case.

The Petitioner's ask this Court for anew trial based on the late disclosure Faggaini exculpatory police report.

**The Appellate:** The Appellate Court decision was, contrary to, Federal established law, and unreasonable determination of the facts in light of the evidence pesented in the State Court proceeding. The Appellate Court stated " it is very clear from the facts in this case that Hale's statement contained in the Faggain exculpatory police report was not made available to the defendant until after the probable cause hearing, but was available to the defendant before trial, it is also clear that Hale's statement was favorable to the defense." This is a miscarriage of justice on the Appellate Court, the record is clear for review. The State misguided the Appellate Court.

**The Court's.** All right, you've had a chance to read the motion for a mistrial.

**Mr. Malone, The Prosecution,** Yes your honor.

**The Court's,** All right, and I take it, it is stipulated that exhibit 1 to the motion for mistrial, a piece of information that was not disclosed to the defendant until Wendesday of last week?

**Mr. Malone, The Prosecution,** Thats right, thats correct, your honor.

The Petitioner's argue this in his Appellate brief, under the Federal Constitution, and State Constitution. The trial records was present to the Appellate Court.