UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CIVIL NO/

3-01-CV-1490-(JCH)

DATE. June 20, 2006

CHARLIE J. McCLENDON

V.

THE STATES OF CONNECTICUT

THE PETITIONER MEMORANDUM

IN CONJUCTION WITH THE ISSUES

TO BE ARGUED BY

CHARLIE J. McCLENDON

## THE NATURE OF THE PROCEEDINGS

The defendant was charged in an eight count information with having committed the following offenses: Count I - capital felony, Conn. Gen. Stat. § 53a-54b(8); Counts II & III - felony murder, Conn. Gen. Stat. § 53a-54c; Counts IV & V - murder, Conn. Gen. Stat. § 53a-54(a)(c); Count VI attempted first degree robbery, Conn. Gen. Stat. §§ 53a-49(a)(2), 53a-134 (a)(1)(2) & (4); Counts VII & VIII first degree robbery, Conn. Gen. Stat. § 53a-134 (a)(2) & (4). Following a jury trial in the Superior Court for the Judicial District of Hartford-New Britain at Hartford, Koletsky, J., the defendant was acquitted of the capital felony and intentional murder charges and convicted of all other counts. On February 19, 1993, he was sentenced to a total effective sentence of 140 years imprisonment. ST 52-54.

## THE FACTS OF THE CASE

Shortly after 4:40 p.m. on Tuesday August 11, 1987, a black male entered C & K Moving Company, located at 211 Walnut Street in the North End of Hartford. 1T 400. The intruder robbed the receptionist Darlene Hale Kelley[1] at gun point. 1T 177, 408-09. He then shot and killed employee Grayland Cannon and company owner Dennis Shortell, while attempting to rob them. 1T 178-79, 411-14.

Minutes before the shootings Hale had given an employment application to a black male whom she described as 5'6" to 5'7" tall, weighing 150-165 pounds, with a pock marked or razor burned face and a thick, bushy, black mustache. 1T 164, 420, 471-75; 2T 549. The man definitely did not have a scar of any sort on his face. 1T 473; 2T

---

[1] The witness married between the time of the incident and trial. All further references to her use her maiden name.

1

575. He was wearing an unbuttoned blue dress shirt, with rolled up and tinted gold or brown glasses with metal rims. 1T 420. Altogether Hale saw this man for 30 seconds to a minute. 1T 173, 453. The full extent of the conversation she had with him was an affirmative response to his inquiry, "Do you have an application for employment?" 1T 453, 455. There were no distinguishing features to the man's voice. 1T 458; 2T 575. His voice was "very even, no accent. Soft spoken. Didn't yell." 1T 419.

As she was handing over the application, Shortell called Hale into his office and instructed her to make a call. She returned from his office, placed the call, and had just hung up the telephone when a man came up behind her, put a gun to the left side of her head and demanded money. 1T 406-08. Although she never saw the robber's face, (1T 209, 409), Hale identified the rolled up blue shirt sleeves on the man's arms as the same as those she had seen on the man to whom she had given the application. 1T 173. She also claimed to recognize the voice as that of the applicant. 1T 174, 420.

Police had great difficulty calming Hale and eliciting information from her. She was seven months pregnant, (1T 179, 413), "hysterical, crying and frightened." 2T 530. That same evening Hale looked through a series of photo books and worked with the police to assemble an identi-kit composite of the suspect. 1T 182, 425-27; Ex. R. The next day she directed a police artist in the drawing of a sketch. 1T 184, 428-29; Ex. S. At trial Hale insisted that the identi-kit composite was a "fairly accurate" rendition of the suspect and the police artist's sketch was as close a likeness as she could summon. 1T 483-85; 4T 1863.

2

The defendant was virtually an immediate suspect, due to his August 13, 1987, arrest for other offenses committed in the North End. At that time police described the defendant as a black male, 5'6" to 5'7" tall, weighing about 150 pounds, with a pock marked complexion and a clearly visible scar on his cheek. 2T 625. Two different pictures of the defendant were purposefully included in photo arrays that were shown to Hale once on August 12 and twice on August 14, 1987. 2T 579, 583, 585. Hale was instructed to look carefully at the photos and to take her time reaching any conclusions. 2T 582-83, 586. All three times Hale failed to make an identification, telling police on August 14th, "the man's not in this array." 2T 585; 2T 624; 628; Ex. 2.

Hale was unable to remember whether she had further contact with the police during 1987. She estimated she was shown photo arrays seven or eight times over the course of the next two years, and never made an identification. 1T 489. In the spring of 1989, Hale was contacted by Detective Faggiani, who had recently taken over the investigation. Faggiani showed her another array and asked her to make an identification. Again she was unable to do so. 1T 187-88, 434. Hale "was asked if saw this person again would I be able to recognize them and I said yes, I would." 1T 188; 492D-E. On September 15, 1989, Hale viewed a line-up consisting of five Hartford police officers and the defendant. 1T 189; 2T 634-638; Ex. GG (video-tape of line-up). She positively identified the defendant by looks and voice at the line-up, and by looks at trial. 1T 244, 247, 440; 2T 639. Hale insisted she had "absolutely not" seen the person she identified at the line-up in any of the photo arrays she had viewed over the course of the past two years. 1T 194, 189; 2T 491.

Immediately thereafter, some two years and one month after the incident, the police secured an arrest warrant charging the defendant with the instant offenses.  App. 3A.

## ARGUMENT

**CLAIM ONE:** <u>THE TRIAL COURT, THE APPELLATE COURT AND THE STATE</u>
<u>SUPREME COURT, DENY THE PETITIONER'S HIS FEDERAL CONSTI-</u>
<u>TUTION.RIGHTS, TO SUPPRESSED. On the grounds, the search</u>
<u>and seizure warrant authorizing the line-up and voice</u>
<u>simple of the petitioner's and the identification pro-</u>
<u>ceduers employed was unnecessary suggestive.</u>

**1).** The petitioner's moves, to pursuant to the Four, Five
and Six Federal Constitution, to suppressed Darlene Hale identi-
fication of him, challeging the Constitutionaity of the search
and seizure warrant authorizing the line-up, and voice simple. He
also challenge the suggestiveness of the identification,but the
State Supreme Court did not certify that issue for review.

A. <u>The trial court's finding and conclusion.</u> Relying on the searc
search and seizure warrant, the Court's found that Darlene Hale,
have preiously gaven a very detailed description of the perpetrat
tor, had adquate opportunity to view the suspect at the time of
the incident, and had been unable to effect an identification
from photos arrays, based on these finding the Court's concluded
that, assuming arugendo a warrant was required ( **A finding the**
**Court's declined to make )** the affidvit and the application for t
the search and seizure warrant established probable cause to
tranport the petitioner's from the status as an incarcerated pris
soner or sentence prisoner for the purposes of a line-up and voic
voice simple.

1

B. **The suggestiveness of the identification procedure.** The Court ruled the line-up identification procedure was not unnecessarily suggustive, and that even if it was, the identification was never the less reliable. So the Court's finds that there is nothing unduly suggestive in the line-up or any of the activities that led up to the line-up. And if the Court's were to go on the second ph phase of that-- of the issue, the Court's would find that the identification in the totality of the circumstance is enormously reliable.

At **The Appellate Court review:** The Appellate Court agreed, and concluded that, in this case, we conclude that the affidavit present a substandtial factual basis to support the Court's conclusion that probable cause for the line-up and voice simple existed. The police offier affiants abtested that Hale gave a detia tailed description of the person who requested the employment app application and she had the opportunity to see the person clearly On the bases of Hale's description of the gunman and the identification of the composite as the defendent by another robbery victim, and justifying Hale's inablity to identify the gunman fro from photoghaph arrays because the photographs did not show the potential perpetrator wearing sunglases, the issuing judge could reasonable have inferred that probable cause existed.

B. **The suggestiveness review:** In this case, Hale had ample opportunity to see and to hear the robber. She had a high degree att ention and was face-to-face with the defendent, and her description of the perpetrateor at the time of the incident was quite –

2

detailed. Hale also demonstrated certainty in identifying at the line-up. Furthermone we cannot assume that the two years period between the identification and Hale's viewing of the defendent was so long as to render her ideniification unreliable. Under these circumstance, the trial Court's properly concluded that the idenification procedure was not so suggestive and unreliable as т to violate the defendent's right to due process.

**A. The State Supreme Court review:** In the present case, we conclude that the affidavit presented a factual basis to support the Court's conclusion that probable cause for the line-up and voice simple existed. the affiants attested that Hale gave a detailed description of the man who had requested the employment application, and that she had the opportunity to see that man and speak with him. The police developed a composite sketch with Hale's assistance. Spillane, the victim of another robbery, told the police that the composite resembled the man who had robbed the service station on August 7, 1987, and that he had a scar on his left cheek. Spillane's co-worker, Rodriguez, confirmed her identification by recognizing, in a photographic array, the defendent as the robber of the service station. Hale stated that she could not identify the ganman from the photographic arrays because he was wearing eyeglasses at the time of the shooting, and the defendent was not wearing eyeglasses in any of the photographs. Hale did not believe, however, that she could recognize the robber's voice and his face if he were to wear eyeglasses. Hale stated that she could identify the robber if he wore eyeglasses –

3

and she heard his voice, conditions that had not and could not prevail in the previous photographic identification attempts. In light of Hale's compsite sketch, which was identifyed as the defendent by another robbery victim, the issuing judge  reasonably could have inferred that probable cause existed to conduct the line-up with the defendent particpating and a voice recording of the defendent. We cocclude that probable cause was established for the police to obtain further evidence concerning the robbery and murder.

The State Supreme Court did not review the suggestiveness issue.

**The Trial Court, The Appellate Court and The State Supreme Court decision resulted in Contrary to Federal established law, in ruling on the suppression motion and motion to suppress identification.** In the Petitioner's motion to suppress, and motion to suppress identification, dated April 23, 1990. The Petitioner's argue to the trial court's for an order to suppress as the fruit of illegal search and seizure under the Federal and State constitution. The trial Court's, relying on the search and seizure warrant, was contrary to, Federal law, and unreasonable. First, trial Court,s gave his own opinion about the petitioner's looks, **T.367 The Court's** " That doesn't look anything like him at all it totally obliterates the quite distinctive facial marking that Mr. Mcclendon has as he sits here before me."

4

Trial Court's was also unreasonable determination of facts in light of the evidence presented in State court proceeding. When and after an police offier testify that he shown Hale photos of the Petitioner's in july of 88. **T. 375 The Court's** " But the fact pattern there, where a Circuit Court of appeals found the conviction should be overturned on a habeas track, the conviction-- or the idenification procedures there were just enormously more suggestive than what we have here, but no, I don't find C, which says July of 88 on the outside of the enverlope, was indeed shown to Ms. Hale until 1989. I think had it been there might have been an ID. But in any event it wasn't." The Court's also stated, **T. 376 The Court,** " It's not important to my decision because the picture doesn't look anything like the complexion of Mr Mcclendon. But yes. I didn't make the finding, but you're certain entitled to the finding, and there's no question that that happened. What didn't happen, at least as I view the evidence, is that the photo array that's in as defence C, the Court finds was not shown to Ms. Hale in the Fall of 1987 or Summer and Fall of 1987, " The Court,s was unreasonable to the evidence at the trial. <u>Williams V. Taylor</u>, 529 U.S. 362 at 412. <u>Jones V. Stinton</u> 299 F.3d 112 at 119.

Trial Court's did not aplyed Federal Constitution laws, to his decision, the Petitioner's argue, and cited Federal laws and Federal citing. The Court's also declianed to make a decision, and when he did, it was three years and three days after the petitioer's was sentence.

The trial Court's decision was Contrary to, Federal established law. Under the Antiterrorism and Effective Death Penalty Act of 1996 ( hereinafter, "AEDPA" ) became effective April 24, 1996. AS part of this Act,28 U.S.C § 2254(d) was amended to read as follow:  (d) An application for a writ of habeas corpus on be-half of a person in custody pursuant to the judgment of the State Court shall not be granted with respect to any claim that was ad-judication on the merits in State Court proceedings unless the adjudication of the claim- **(1)"** Result in a decision that was contrary to, or involved an unreasonable application of, cearly established law, as determined by the Supreme Court of the United States;" Or  **(2)"** Resulted in a decision that was based on an un-reasonable determination of the facts in light of the evidence presented in the State Court proceeding."   The Petitioner seek to suppressed on this ground, and grant him a new trial.

The Appellate Court also was unreasonable, and contrary to, Federal established law. From the Appellate Court decision, take the same tone as the trial Court's. The Petitioner's cited Fed-eral, and State Constitution, in his Appellate Court brief, on the issue of suppression motion, and motion to suppress identifi-cation. The Appellate Court did not analyzed the issue under the Federal Constitution, only under the State Constitution, the re-cord is clear on this. The petitioner's seek to suppressed on this ground, and ask the court to grant him a new trial..

The State Supreme Court, was also unreasonable, and contrary to Federal established law. The State Supreme Court relyed on the trial Court's decision and no the Appellate court decision. The Petitioner's brief to the State Supreme Court, was under the Federal Constitution, and under the State Constitution. The Petitioner's requested, State Supreme Court to review the issues of his motion to suppress, and motion to suppress idenitification, under the Federal Constitution. There was no analyzing from the high court under the Federal Constitution. T he State Supreme Court, just literally repeted what the Appellate Court stated. Never analyzing the issues under the Federal Constitution. this is cearly unreasonable, and contrary to Federal established law. The Petitioner's seek to suppressed the line-up and voice simple of him, and request a new trial. **Williams V. Taylor**, 529 U.S.362

A. **The petitioner's was illegal seizure on a warrant that was based on a hunch rather than objective facts constitution probable cause.** The warrant authorizing the line-up and voice simple can not pass must under the Four, Five and Six Amendments to the United States Constitution. To central role to statutory safeguards is implementing the Federal Constitution right of personal liberty, is obviosly a _valid_ warrant that established probable cause to seizure the Petitioner's for the line-up, and voice simple purposes, because the warrant at issue wholly failed to establish probable cause. this case present the functional equivlent of warrantless seizure the Petitioner's.

7

It's well settled that s seizure for a line-up purpose transcends parmissmble belief investigation detention and must be supported by probable cause or a warrant, Hayes V. Florida, 470 U.S. 811. Terry V. Ohio, 392 U.S. 1. Since the warrant here filed to establish probable cause, it was COnstitutional defective, and the re sulting seizure was illegal. T he Petitioner's argue at trial, the warrant authorizing the seizure never got beyound a mere hunch.

After reciting the facts surrounding the death of Shortall and Cannon, the affidavit warrant set fort Hale generlized intial description of the suspect. It follow with information detailing the Petitioner's arrest on unrelated charges for offence occurring in the same area of the said incident, after one of the vivtim in an unrelated offense was shown Hale generalizes description of the suspect, stated, the person who robb him bore a re-semblance to Hale fashion sketch when police learned that the perpetrator in the unrelated offense had a large scar running from the top of the person fourhead, down to the person face, photo of the Petitioner's was shown with other. The vitvim of the unrelated offense identified the Petitioner's as the perpetrator who robb him on August 7, 1987. It then states that Hale was also then shown a photo array with the Petitioner's photo, but filed to identified the Petitioner's. Almost two years and on May 18, 1989. the affidavit stated informed Detective Faggiani that she remained really unsure if she could identified the male she gave the emploment application to on August 11, 1987.

8

On june 16,1989 Hale met with again the police and prosecutor and stated that if she heard the same voice she might beable to identified the shooter.It then concludes on a hopeful note; "A line-up viewing and voice sample of Charlie James Mcclendon may produce a postive ientification"

N othing in this warrent establish any cause to believe that the petitioner was the C&K perpetrator.It plainly stated,this was a fishing expedition at best.The olny description of the killer was generic.there is no description of the other unrelated crimes from which to conclude if the petitioner did other,he did this crime.GIven the deficiencies in the affidavit,a substantial factual basis upon which the magistrate could conclude that probable cause existed was clearly lacking here.

"Close enogh is not good enough"probable cause to seach requires more then a reasonble beliefthat the item tobe seized will be found in the place to seach,also required is a resonable brief that theitem ot be seized are"Connected with criminal activity" U.S.V Delmonoco 469U.S.1036(1984)The"Nexus"require between the item tobe seized(The petitioner person and voice sample),and criminal behavior was clearly not established under the focts presents here.Warder v Hayden,387 U.S.294(1967)

9

There wasnot no credible substantiated information from which to infer that the petitioner was the C&K perpetrator. Just because he had been arrestd for three unrelated robbery is not a reson to believe he did the said incident.

The line-up identification made by Hale and introduce at trial was the result of an illegal seizure effected pursuant to a defective warrent and should have been suppressed as poisonous fruit of an illegal seizure.Wongsun V. U.S. 371 u.s. 471.

If a warrent affidavit do not provide a substantial basis for the finding of probable cause,then the evidence or contrabond seizure in the exercution of that warrent will be suppressed even when the officer exercuting the warrent in good faith upon its authority,Wong Sun V. U.S. 371 U.S.471(1963)

C.<u>the Identification Proceducre Was Unnecessarily suggestive And Was Not Reliable</u>.Hale ientification of the petitioner was tainted by suggestive procedures and was not reliable.There can be no doubt that inaccurate eyewitness testimony may be one of the most pedjudicial fectures of a criminal trial.."while juires may be led by their experience to believe their eyes,and by inference,what they hear from those they have seen,that eyewitess testimony may sometime be at least trustworthy means to identify the guilty,<u>Harper v. Kelly</u>,916 F.2d 54(1990),<u>Kompshoff v. Smith</u>, 698 F.2d 581(2d cir1983)

<u>The procedures Was Unnecessarily Suggestive</u>An identification procedures is unnecessarily suggestive only if it gaves rise to a very substantial likehood of missidentification. Cearly that standard was not met here.The only face saw in the line-up was the petitioner and oc couse that was through repeated exposure to it over a course of two years."Suggestiveness can be created intentionally or untentionally in many way"<u>United Stases v. Wade</u> 388 U.S. 218(1967)

The recurrence of the petitioner photos was shown to Hale over a course of two years,antil she identified the petitioner.The taint cannot be purged especially here when Hale admitted her abilty to recognize the petitioner where a long time have have passed since the incident.It is undisputed that Hale saw the suspect for only 30 seconds to a minutin,while her memory was still fresh she fashioned a composite and sketch,both of which she continued to insist were accurate depitions of the suspect.

The voice identification is equally flawed as well. Its strains credulity to be believe that any one could identified voice over two years,,only heard for 30 second to a minute,Hale stated the voice was soft spoken and unremarkable.

11

D. **The identification was not reliable**, The question reliable is a mixed question of facts and law, **Dickerson V. Fogg**, 692 F.2d - 238, which is not entitled to a presumption of correctness. It must be exaimined " with exceptionly close scrutiny " application of this standard leads ineluctable to the concludsion that the curruping effective of the suggestive procedure. **Manson V. Brait-hwait,** 432 U.S. 98.


Hale, identification was not sufficiently reliable to be ad-missable. First, Hale, 30 second to a minute opportunity to view the suspect, was colored by hysteria and fear. " Opportunity to form a accurate mental picture was impaired by the tension of the momont " **Dickerson V. Fogg,** 692. F.2d at 245. The entire time of the incident Hale, remained facing the wall and never sew the assailant, " attention to the event frequently must be distin-guished from attention to the assilant " **Solomon V. Smith,** 645. F.2d 1179. This was not a case where there close and protracted personal observation of the assailant by the victim witness.

The two years idenification of the Petitioner's was unreliable, **Marsden V. Moore**, 847 F.2d 1536.  **U.S.  V.  Emanuele,** 51 F.3d - 1123.  An eyewitness " si only able to reture the sparpest image of the suspect only for a few hours " **Dickerson V. Fogg,** F.2d at 247. **Chavis V. Henderson**, 638 F.2d 534 at 537.

The Petitioner's seek to suppress the evidence, and request a new trial.

CLAIM TWO: <u>THE TRIAL COURT, AND THE APPELLATE COURT, DENY THE
PETITIONER'S HIS FEDERAL CONSTITUTION RIGHTS. THAT THE
PROSECUTION'S SUPPRESSION OF DETECTIVE FAGGIANI'S EX-
CULPATORY POLICE REPORT REQUIRE A NEW TRIAL.</u>

The Petitioner's moves, pursuant to the FIve, Six and Fourteenth,
Federal Constitution. Challenging the Constitutionaity of the
Prosecution's suppression, of a Detective Faggiani exculpatory
police report.

Proor to the beginning of the October 31, 1989, probable cause
hearing, the Court's granted the Petitioner's motion for preli-
minary disclosure and production to compel proceeded of potenti-
ally discoverable materials. The hearing proceeded and Darlene
hale identificatified the Petitioner's in-court as the person she
pick out the line-up on September 18, 1989, as the C&K perpetrat-
rator.

Hale was certain of her identification and insisted she had no
doubt about its accurary. Detective Omicienski testifiied at the
probable cause hearing, when asked wheather hale, had ever stated
she would not be able to identified any one, the Detective, test-
ified, to the best of his knowledge, " He could not recall hale,
saying she would not be able to identified the person whom per-
petrated this crime " the Court's foind probable cause, and the
case preceeded to trial. The Petitioner's continued to seek dis-
cover of exculpatory information. The evidentiary portion of the
trial commenced on NOvember 18, 1992, five days in to the State's
case, after Darlene Hale han testified in front of the jury

13

On november 25,1992 the state disclosed an exculpatory police
report,written by Detective Faggiani,in that report Faggiani,
who had died a year and a haalf to two years before the November
1992 trial,but at least a year after the 1989 probable cause
hearing related that"Ms.Hale wasmade awear that an arrest was in
sight concerning said incident and that she have nothing to fear
from the suspect (The Petitioner)since he is currently incar-
cerated for other crimes,Ms.Hale stated she did not see the
culprit at the time of the robbery/murder she would not beable to
make an identification,Ms.Hale,stated it was a <u>assumption</u> on her
part that the black male who enter minutes before was the same
one responsable.Ms,Hale,stated she based this on partial clothing
observed on the culprit at the time of the incident.Hale stated
after the first male left,after receiving a job application, she
was seated at her desk,that she felt what appered to be a gun to
her head,that a black male then order her to not turn around,that
it was at this time,that she observed a arm of a black male,that
she recalled a light blue shirt with the sleeve being long,that
the sleeve were rolled-up two to three time.Ms.Hale stated that
she was seven months pregant,at the time and scared,thats all she
really remember was the gun to her head".

Base on this tardy disclosure the petitioner had move for a
mistrial.The trial court found the Faggiani police report to be
exculpatory,but rule the prejudice was minimal.

**A. The Prosecution's Suppression of Detective Faggiani exculpatory police report, require a new trial.** On October 31, the Court's granted  the Petitioner's motion for preliminary disclosure and production and to compel perservation of potentially discoverable materials between the probable cause hearing, and the November 1992, trial, the Petitioner's continued to seek discovery of exculpatory information. Three years, and one month after the probable cause hearing, on November 25, 1992, after the State chief witness had testified at the Suppression hearing, and in fort of a jury, the prosecution's disclosed the Faggiani police report. The trial Court's ruled the Faggiani police report to be exculpatory, but ruled the prejudice to be minmal, and ordered the State's to return Hale for further question. Pursuant to the Court's order, the State's brought Hale back for further cross-eximintion. Upon returning, Hale denied Faggiani, had ever told her an arrest was insight, and insisted she did not tell Faggiani that because she did not see the culprit face, she would not be able ti identified him.

Exculpatory evidence must be disclosed at a time in which it can be effectively used. The Faggiani, exculpatory police report was favorable to the Petitioner's. **Brady V. Maryland**, 373 U.S. 83

Detective Faggiani,was the chief investigator of the case since may of 1989,four and a half months befor the petitioner,was arrested for the said incident.By the time the Faggiani police repoty was disclosed,he was dead.With out the knowleged of this exculpatort police report,there was no reason to called Faggiani to the stand at the probable cause hearing for a defence witness to impeachment.It cear he was alive at least a year after the probable cause hearing.The trial court had all ready ruled on the petitioner motion to suppressed and the motion to suppressed identification.

The state baldly asserts that,"The trial court never know,either before or after it ruled,that the petitioner in fact had the Faggiani police reportbefore the date on which he claimed the state had first disclosed it",This a grossly inaccurate distort-ion of the recordwhich only can br explained as wishful thinking on the state part.Despite the state attempts to obfuscate,the record upon which the petitioner properly relied,both at trial and on appeal is clear and unequivocal.

The obvious and unmistakable implication of this novel and newly raised state claim is that the petitioner lied and deceived the the trial court in moving for a mistrial on non-discloseure grond when they knew these grounds to be false.

The state claim is both outrageous and offensive,more over,the Appellate Court ruled the prosecution had this report,but the petitioner had the report to.

The is clear this Faggiani police report was turnover on November 25,1992.The Appellate Court misunstood when the petitioner was reading from the warrent affidavit authoring the line-up and voice sample.The Faggiani police report,Exculpatory police report have toldly differant information that was fovorable.

**The Court** All right,you've had chance to read the motion for
a mistrial

**Mr.Malone**(The Prosecutor) Yes your honor.

**The Court** All right,And I take it,it is stipulated that exhibit 1
to the motion for mistrial,a piece of information that
was not disclosed to the defendant nutil wendensday
of last week?

**Mr.Malone**(The Prosecutior)Thats right,thats correct,your honor.

The exculpatory Faggiani police report was favorable to the petitioner.Hale was the only witness to identified the petitioner and Hale odentification came over two years and one month after the incident,after she fail to pick ouy the petitioner photos array,over the course of two years."It is well seatablished that IMpeachment evidence as well as exculpatory evidence falls within **Brady v. Maryland** 373 U.S. 83(1963)

If the Petitioner's had been able to " Bolster " Hale, intial failed identification with the 1989, statement that Hale continue to believe she would beable to identification the perpetrator and had an " Assumption," that the same person whom came in for the job application, was the same person whom robb C&K. Ohler V. U.S. 529 U.S. 753. (2000), U.S. V. Cuffie, 80, F.3d 514. Carter V. Bell, 218 F.3d 581 ( 6th Cir. 2000).

The trial Court's ruling: The court's, T. 789. All right, I find that Exhibt 1 is exculpatory. I find that the preJudice to be minimal, but to clear any prejudice I will order the prose- cution upon the defence request to have Ms. Hale, in court for a reopening of cross-examination. If the defese does not request it I will obviously not order it. The request should be made within forty-eight hours enough time.

The Appellate Court ruling: It is clear from the facts in this case that Hale's statement contained in the Faggiani, report was not made available to the defendent until after the probable - cause hearing, but was avilable to the defendent before before trial. It is also clear that Hale's statement was favorable to the defense. The critical issue, therfore, is to determine if the nondisclosed evidence was materal. We conclude that the evidence was not material because we are not persuaded that the outcome of the probable hearing would have been different had the Faggiani, report been disclosed.

**Appellate Court continue:** The facts in the Faggiani report are consistent with the facts set forth in the affidavit present to the Court's in the search and seizure warrant. The affidavit stated in relevant part: On May 18, 1989, Hartford Police Department Detective Ronald Faggaini spoke to Darlene Hale, re identification. She informed him that she is really unsure she could identified the male she gave the employment application to on August 11, 1987, before the murder occurred. " The defendant, therefore, already had information that would have allowed him to question Hale at the probable cause hearing on the report conflict between her identification of the defendant in court and her inability to identified the defendant in her statements to the police. Furthermore Hale had consistently stated before and during the trial that she had not seen the robber's face during the robbery and shooting, but recognized the color of the shirt he was wearing and the way in which his shirt sleeve was rolled up as being the same as the man who requested a job application minutin before the robbery. On the basis of these facts, we conclude that the defendant failed to demonstrate that the Faggaini report was materal

**The Appellate Court review of the hearsay rule, on Faggaini police report.** The trial Court's also found that the hearsay was mis-leading because, in the context of the entrie report the statement does not mean what it appears to say althouhg Faggaini, reported yhat Hale could not idenify thr gunman, he also reported, that Hale recognized the gunman's rolled-up shirt sleeve and arm as that of the black male to whom she had given a job application minute before.

19

**Continue:** These statements are contradictory and render the report mis-leading and unreliabl. We conclude that the Court's properly excluded the Faggaini report.

**The State Supreme Court review; of the hearsay rule, on the issue of Detective Faggaini exculpatory police report, but did not hear the issue, on exculpatory police report.** The State Supreme Court: The statement was contradicted by the evidence present at trial and was not corroborated by any other evidence. The trial Court's was therefore correct in concluding that the report was not reliable.

**The Trial Court, The Appellate Court And The State Supreme Court Decisions, was Contrary to, Federal Established Law, And Unreasonable In Determination of The Facts In Light Of The Evidence Present in The State Court Proceeding.** First, the trial Court's decision was contrary to, Federal established law, The Petitioner's argue at trial, under the Federal Constitution. And cited Federal citing, as well as State Constitution. The Petitioner's just previously argue, the motion to suppress, and motion to suppress identification, when the State's disclosed the Faggaini, exculpatory police report five days into the testimony of the trial. The Petitioner's could have used this information in the suppression motion hearing. **Brady V. Maryland,** 373 U.S. 83. In motion for a mistrial, the Petitioner's cited Federal Constitution.

Also in the hearing for the mistrial, the Petitioner's relyed on **Brady V. Maryland,** 373 U.S. 83. The court's, at the motion for a mistrial hearing, shown contrast between the Faggaini exculpatory police report, and application affidavit. T. 784. **The Court's** " Well, I just wondered how far after. Because the Faggaini affidavit talks about a June 16 meeting at which Assistant State's Attorney Malone was present. And there's no mention of that in this report.( Faggaini, exculpatory police report )  Well, it seems to me that you confronted Ms. Hale on cross-examination with paraprases of the warrant affidavit, and both times she was quite firm that she never told the police officers that she was unsure if she could make identity. She said if I see him I'll know him. And she said that in the motion and then she said that in--before the jury. So I guess I need you to explain for me why you think it would have been different had you asked--didn't you tell Detective Faggaini that you were just making an assumption that the person who held the gun to your head was the person who got the application. "  It is clear from the trial record that the Petitioner's did not have this information befor trial or the probable cause hearing. The trial Court ruling was contrary to Federal established law, and the Court's decision was unreasonable applied to the princple to the facts of the case.

The Petitioner's ask this Court for anew trial based on the late disclosure Faggaini exculpatory police report.

**The Appellate:** The Appellate Court decision was, contrary to, Federal established law, and unreasonable determination of the facts in light of the evidence pesented in the State Court proceeding. The Appellate Court stated " it is very clear from the facts in this case that Hale's statement contained in the Faggain exculpatory police report was not made available to the defendant until after the probable cause hearing, but was available to the defendant before trial, it is also clear that Hale's statement was favorable to the defense." This is a miscarriage of justice on the Appellate Court, the record is clear for review. The State misguided the Appellate Court.

**The Court's.** All right, you've had a chance to read the motion for a mistrial.

**Mr. Malone, The Prosecution,** Yes your honor.

**The Court's,** All right, and I take it, it is stipulated that exhibit 1 to the motion for mistrial, a piece of information that was not disclosed to the defendant until Wendesday of last week?

**Mr. Malone, The Prosecution,** Thats right, thats correct, your honor.

The Petitioner's argue this in his Appellate brief, under the Federal Constitution, and State Constitution. The trial records was present to the Appellate Court.

22

The appellate Court, decision on the hearsay was also, even more contrart to, Federal established law, and unreasonable. In the Appellate Court own words " These statement is contadictory." If the Petitioner's was given the exculpatory police report early the out come of the trial would have been differrent.  The Petitioner's seek a new trial based on the lateness of this exculpatory Faggaini police report.


**The State Supreme Court:** The State Supreme Court also agreed with the Trial court's, and the Appellate court, on the issue of hearsay, the State Supreme court did not hear the suppression of the exculpatory police report. The State Supreme Court was contrary to, Federal established law, and unreasonable. The record is clear for review. The State Supreme Court stated, In this precase, the state's produced other witness who saw the defendant leaving the murder scene wearing the same clothing described by Hale at the time of the crime the crime had been committed, and ballistic evidence that placed the murder weapon at the defendent apartment.  The State Supreme Court decision was unreasonable to the evidence that was present at trial. The other witnesses did not see the Petitioner's running from the crime scene, and the so call, ballistic evidence was contradicted by the State's own witness. James Mcdonald who was fired from the Hartford Police Department, in the Fall of 1987, over a finger-print dispute with the F.B.I. The same time he tested fired the gun.

The Petitioner's is seeking a new trial from this ruling from the State Supreme.

The trial court's the appellate court, and the state supreme court, was contrary to Federal established law. <u>Williams v. tay-lor</u> , 529 U.S. 362. <u>Jones v. stinton</u>, 229 F.3d 112, at 119.

CLAIM THREE: <u>THE TRIAL COURT, THE APPELLATE COURT, AND THE STATE SUPREME COURT, DENY THE PETITIONER'S HIS FEDERAL CONSTITUT-ION RIGHTS" TO PERMIT THE PETITIONER'S TO INTRODUCE A POLICE REPORT UNDER THE RESIDUAL EXCEPTION TO THE HEARSAY RULES.</u>

After the trial court's deined the Petitioner's motion for a mistrial, based on the state's failure to timely disclosed the Faggaini police report, the Petitioner's sought to admit the exculpatory police repotr, under the residual exception to the hearsay rules, under the Six and Fourteenth Federal Constitution.

Hearsay may be admitted if there is a sufficient probability that the statement is reliabl and trustworty, if the evidence contain-ed in the statement in necessary to the resolution of this case. <u>Washington V. Texas,</u> 388 U.S. 14.

The first criterion that must be met in determining the applicability of thia exception is relevance."To be relevant, the evidence need not exclude all other possibility,it is sufficient if it tends to support the conclution,even to a slight degree." Here that is no question the evidence the petitioner soughtto to admit was relevant,it squarely undermind the testimony of the state only identiification witness.The court has determined"That the necessary reqiurement is met when,unless the hearsay statemen is admitted,thetis fact it contain may be lost,either because the declarant is dead or otherrwise unavailable,or become the asser-tion is of such a nature that evidence of the same value cannot be obtained from the same or other sources.

Indisputable that was the case here.The sole source of this information was Detective Faggiani,the author of the exculpatroy police report in question.Brother officers testified that Faggian died a year and a half or two years before the November 1992, trial.Moreover,the statement contained adequate indicia of reliability to support admissibility under the residual exception hearsay rule.

Under our Federal Constitution,the right of an accused in a criminal trial to do due process isin essence ,the right to a fair oppportunity to defend against the state accusation. The right to to confront and cross-exaimne witnesses,and to call witnass in ones own behalf,have long been recognized as essential to due process.

The denied of due process is the failureto observe that funda-
mental fairness essential to the very concept of justice.In order
to declare a denial of it,we..must find that the absence of that
fairness fatally infected the trial,the act complained must be of
such aqality as necessarily prevents a fair trial.

The trial court exclusion of the proffened testimony as hearsay
"Fatelly infected"the"Quaility of the petitioner trial.Detective,
Faggiani,was the lending vestigator in this case at the time,the
line-up was conducted by,Faggiani,it was Faggiani who had contact
whit Hale,that led police to believe a line-up would be fruitful
and he was the affidavitat on the search and seizure warrant
authorzing the identification procedures.

The jury had a rightto know that Faggiani had filed an offical
police reort relating that Hale,testimony that the prospective
job applicant was indeed the perpetrator was a surprising event
of fairly recant vintace-that shortly before Hale,made this
identification,she had told Faggiani since she never saw the
suspect face it was an "Assumption"on her part that the peretrato
was actually the job applicant.

Under these circumstance,where Constitution rights directly
affecting the ascertainment of guilt are implicated,the hearsay
rule,may not be applied mechanistically to defeat the end of
justice.Chambers V.Mississippi,410 U.S.95,Washington V.Texas 388
U.S.14
The petitioner aks the court to grant him a new trial

As statesd aboue the trial court's the Appellate Court, and the State Supreme Court, decision was contrary to, Federal establish law, and from that resulted in a decision that was based on an un reasonble determination of the facts in light of the evidence pre sent in the State Court proceeding. The Petitioner's ask this - Court to grant him a new trial.

CLAIM FOUR:

## THE PETITIONER'S WAS DENIED HIS SIX AND FOURTEENTH FEDERAL CONST-ITUTION RIGHTS? TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

The Petitioner's was arrested on August, 11 1987, for unrelated charges the Petition's aws question about the said in-cident, at that point the Petitioner's became the prime suspect of the C&K incident. Over the months, the police department con-tinue to try and see and interview the Petitioner's. The Petit-ioner's became frustrate with the poilce accusation, the Petit-ioner's then contracted his then attorney, Susuan Story, on - December 8, 1987, at the Petitioner's request, attorney Susuan - Story sent two investigetor from her office, (Imar Grimes and Ellen Knight) to investigate, and to interview Darlene Hale. Both spok to Ms. Hale, and question her about the C&K incident. Hale stated to the two investigateors " She had spoken to Det, Omiec-inski, at her home on August 14, 1987, concerning the C&K incident, Det, omiecinski, shown her a photo of the suspect who he think was responable (The Petitioner's) " Hale stated, " The person Det, Omiecinski, named was Charlie Mcc..." she Hale stru-ggled with the last name, at that point the two investigators in-form Hale, they have a client name Mr. Charlie Mcclendon, at that point Hale, interrupted them and stated " Thats the name and per-son Det. Omiecinski, gave her, and shown her a photo of."

Hale stateded"she was shown a photo of this Charlie Mcclendon(The petitioner),and he was deffinitely not the culprit."Hale stateded "she stateded this to Det.Omiecimski,the night at her home on August 14,1987."Hale stateded "she inform Det.Omiecmiski she (Hale) know this Charlie Mcclendon any way because he had filled out a job application before,and use to check on it,and he has a cusin by the name james Dennis,who she(Hale)work with at C&K." Hale Stateded"she had enough contact with Charlie Mcclendon, (The petitioner)to know what he look like,and he was not the the person who came in on August 11,1987.and asked for a job application at C&K.Hale stateded"Over the course of several-months Det.Omiecimiski tryed to make her feel like it was her fault they(Cop)have't made an arrest."Hale stateded,Det.Omiecimski stateded to her at one time This Charlie Mcclendon,(petitioner) had fourteen robberies cases,and one of those cases he shot an old man in the leg with the same gun he used to kill these people but because you(Hale)wont make an identification on her we(Cop) cant arrested him,although we(Cop)think he(Petitioner)did it,but we(Cop)only have circumstantial evidence."Hale statededDet.-omiecinski told her he reallx want to make an arrest on this one, want to make an example of this Charlie Mcclendon,want him to die in the electeic chair.

Hale stateded,"none of the photo she was shown was the right person".Hale stateded,"Det.Omiecinski,constancely pursure her over the months,to make an identification on this Charlie Mcclendon,making her her feel it was her fault,an arrest wasn't made".At that point both investigotors made it very clear was they taking about the same Charlie Mcclendon,Hale stated,"Yes,I was shown a photo of the suspect Charlie Mcclendon(the petitioner) by Det.Omiecinski,and I inform him he was not the culprit,I had enough contact with Charlie Mcclendon,to know what he look like, he had filled out an application before,and had check on it — several time,and I know his cusin,by the name James Dennis,whom work with me at C&K.

## THE TRIAL COUNSELS WAS INEFFECTIVE

The petitioner was arrested on unrelated charges on August 13, 1987.The petitioner was the prime suspect.On the petitioner requsted,attorney Susuan Story,sent her owned investigators Irma Grimes/Ellen Knight to interview Darlene Hale,on December 8, 1987.Form this interview the petitioner thought he was cleared out of this double homcide,plea guilty to the unrelated charges doing jury selection,after requsting his then trial attorney Mr. Lawrerce Hopkins,to stated on the record,the petitioner was cleared out the double homcide.

On September 15,1989.while incarcerated on unrelated charges,
the petitioner was taken to a line-up.On September 22,1989. the
petitioner was arrested for the said incident.At the October 31,
1989 probable cause hearing,the petitioner was represented by Mr.
Lawrerce Hopkins,and Mr. Fred Decaprio.Hale was impeached at the
probable cause hearing,on her December 8,1987.to the investigotor,
Hale deined,she ever stated she know the petitioner to the two
investigators,and she wasn't talking about Charlie Mcclendon,but
a Charlie Mcclellar.The case proceed to trial.Mr. Hopkin whom
impeached Hale at the probable cause hearing,left the Hartford
Public Defendent Office.And on long represented the petitioner.He
was placed by attorney Susuan Story.Doing the petitioner suppres-
sion hearing,at trial on November 19,1992.The petitioner request
Attorney Decaprio to impeached hale,on her prior inconsistent
statement,she made to the investigators,he refused.Both trial
attorneys purposely misrepersented the petitioner.the case was
capital felony,the central issused was the petitioner identity.
Trial counsels had undisputable evidence concerning the petitioner
identity.Hale inform trial counsels owned investigators,two years
prior to her september 15,1989.line-up identification,that she
know the petitioner and his cusin James Dennis.Both trial
counsels refused to called they own investigators,and the
petitioner relative James Dennis as witnesses.

The petitioner also had requested his trial counsels to investi-
gate a Charles Queiroge,and call him as a witness.Mr.Queirroge
was an empolyed at Clark Contect Interiors,locate at weston St.
in Hartford Conn.On August 11,1987,He was restoring office -
cubicles at C&K,around 3:30-4:25 p.m.,when he notice a black male
standing in front of the bulding of C&K Moving Co.,deressed-up as
the description gining of the suspect killer. He described the
suspect as a black male,light medlum compexion 5'8" in hight
about 20 to 25 yrs., old, wearing a light blue shirt with the
sleeve rolled-up.On August 31,1987, Charlie Queiroge, view a
photo array of polaroid photos color type A-1 through A7. in
those photo he observed A7,and stated that he had seen this black
male at C&K Moves within days recently of the robbery-shooting.
He stated he saw Charlie Mcclendon (The petitioner) as recently
as August 10,1987,but was not the black male suspect male,he
seen standing next to the bulding of C&K Moving Co.on August 11,
1987, at 4:25,Det,James Pasqurell,Det.Timothy Sullivan,Det. N.
Russo,was found to have lied on their undated police report-
THat Charles Queiroge,picked the petititoner as the one looking
similar to the black male that was standing in front of C&K Moves
Co.Mr.Charles Queiroge has been storing office cubicles,and -
picking them-up,for five month at C&K.Moving Co.Failure to invest
-gate,and call witnesses,was ineffectiveness.Bryant v.Scott,
28 F.2d 1411(5 cir 1994),Pauel v. Hollins,261 F.3d 210,(2d cir-
2001).

Six Amendent Rights to counsel is right to effective assistance of counselor.Mcmann V. Richardson,397 U.S. 759,at 771.The trial counsels stated,"All the information in the statement Hale gave to the investigators was no good,and they fear they would had call her a lier" Hale was impeached at the probable cause Hearing on her two years statement she gave to the investigators,on Decumber 8,1987.Counselors failure to impeach proecution eye-witness against petitioner was ineffective assistance,because witness testimony was the olny direct evidence aganist petitioner Dixon v. Snyder,266 F.3d 693(7 cir 2001),Counselor,Susuan Story and M.Fred Decaprio,had undisputable evidence,of det.Omiecinski pursuring Darlene Hale to identify the petitioner as the C&K, perpetrator,Hale refused,stating ,she know the petitioner,and his cusin James Dennis,Hale stated,she had enough contact with the petitioner to know what he look like.Counselors refused to call the two investigators,and impeached Darlene Hale,on her two years inconsistent statement.A failure to called,and impeach witness is ineffective.Berrymam V. Motion,100 F.3 1089. Workman V. Tate - 957 F.2d 1339. Harris V. Reed,894 F.2d 871.


The petitioner was most definitely,prejudice by trial counselors ominous acted.The case was Captal Felony,other crimes evidence, was interduce in the trial,the case was sole based on identifi-cation.The trial counselors own investigators would had testify if they had been called.The petitioner,cusin James Dennis,would had also,testify if called.Also Mr. Queiroge would had been a good witness if,trial counsel had investigated him,and called him as a defence witness.

The Petitioner's had a right to called witness in his own defense Griffin v. Warden, 970 F.2d 1355. Foster v. Lockhart, 9 F.3d 722. Trial counsels should had impeached, and called the Petitioner's requested witnesses, to refute Darlene Hale testimony at the suppression hearing, and at trial, Lawrence v. Armontrout, 900 F.2d 127. Chamber v. Mississippi, 410 U.S. 284. Stricland v. Washington, 466 U.S. 668.


   The Habeas Court, and The Appellate Court, decision was contrary to, Federal Established Law. The law of Strickland, is very clear, the Petitioner's met the two pronged test. UNder this analysis, to prevail on a Constitution claim of effective assistance of counsel, the Petitioner's must demonstrate both (1) deficent performance and (2) actual prejudice, to establish deicient performance, a Petitioner must that counsel's representation " Fell below an objective standard of reasonable " Loliscio v. goord, 263 F.3d 178. The habeas Court was unreasonable, in his determination of the facts in light of the evidence presented in the Habeas Court proceeding. The Habeas Court also rule contrary to, Federal established law. The two investigators testified, and the Petitioner's cusin who work with Darlene Hale, at C&K at the time of the murder. The two trial counsels, also testified that the Petitioner's constancely requested that they call the investigators, and the Petitioner's to the stand.

Trial counsel's Susuan Story, stated at the Habeas hearing, that Darlene Hale, explanded away the evidence at the probable cause hearing, just the contrary, at the probable cause hearing Darlene Hale, was ask about the Petitioner's cusin, she was also ask this so call charlie muccullen, did he had acusin by the name of James Dennis, she replyed she dont know. Darlene Hale also stated she dont recall seeing a phot of this person, by the name of Charlie Mccullen. The investigators report also stated how Darlene Hale told them about the Petitioner's unrelated charges, that was in-troduce at trial, she also spok about the pursuse the police put on her to identified the Petitioner's. The record is clear for review. The prejudice to the Petitioner's was very harmful. The case was Capital felony, the solo issue was identity, there was other crimes introduce in the trial, the two investigators would have testified that Darlene Hale stated the police pursure her in making an identification on the petitioner's, and the petit-ioner's cusin, James Dennis, would also have testified that Darlene Hale, kown the Petitioner's and him was cusin. The jury deliberated for 9 days, a very storng reason if these witnesses would had been called the out come of the trial would have been different. The Habeas Court, and The Appellate Court ruling was unreasonable, and contrary to, Federal established law. The Petitioner ask this court to grant him a hearing to openly view the issue, and grant him a new trial.

THE HABEAS COURT DENY THE PETITIONER'S HIS FEDERAL CONSTITUTION

RIGHTS, FOR CERTIFICATION TO APPEAL ITS DISMISSAL OF THE PETIT -

IONER's, PETITION FOR A WRIT OF HABEAS CORPUS, AND HABEAS COR-

COURT, ERRED IN DETERMINATION THAT THE PETITIONER'S WAS NOT

DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

This an appeal from the denial of the Petitioner's certi-
fication after the dismissal of the petion for a writ of habeas
corpus. The Petitioner cited Federal Constitution.


The Habeas Court's, and the Appellate Court was unreason-
able and contrary to, Federal law, Lozada v. Deeds, 498 U.S. 430.
Barefoot v. Estelle, 463 U.S. 880. As the Petitioner's stated in
above in the claim of ineffectective assistance of counsel. The
Habeas Court, and The Appellate Court ruling has no grunds to
stand on, once this court's review thismissue.


The Petitioner's seek a new trial on this isse, and all
the rest of the issue, the petitioner seek a hearing on the issue
at hand. The Court, this Court's need to openly review this case
by conducting a hearing.

35

The Habeas Court, The Appellate Court, and State Supreme Court
Decision Was In Contrary To, Federal Established Law. The Court's
Habeas Court's appiled law that was contrary to, federal Law. The
evidence was very clear to established ineffective assistance of
counsel. This court's should grant the Petitioner's a hearings
just on this issue alone, to established the injustice that was
done. The trial attornies had undisputable evidence of the Petit-
ioner's identity, which was the solo issue in this case. The
State's start witenss, inform to of they own investigators, she
was being pursuant too make an identification on the Petitioner's
nineteen months to two years before the Petitioner's arrest. The
jury had a right to know this information. Hale had connect the
petitioner's to one of the worker at C&K at the time of the mur-
er. Which was in her own staement ( **She know Charlie Mcclendon,
any way because he, have a cusin that work here, name James -
dennis, and I told the police this** ) The attornies failt this
evidence was not inportent to the Petitioner's and the Jury to
hear.  The Appellate, and the STate Supreme Court, was in con-
trary to Federal established law. <u>StrickLand v. Washington</u>. is
very clear on this matter.  The Petitioner's ask this Court's to
vacate the Petitioner's 140 years sentence.And grant him a new
trial on all claims. The Petitioner's also seek to be release
from State custody.

36

The Petitioner's submitted the following information to,

**(1).** Untied States District Court Of Connecticut

**(2).** Attorney General Richard Blumenthal.

**(3).** Commissioner of Correctional, Thersa L. Lantz

Charlie J. Mcclendon
900 HighLand Ave.
Cheshire Conn. 06410

## CERIFICATION

Petition's cerifies a true copy of this document has been mail to Responent's Consels, Carolyn K. Longstreth, Esq. Assistance State Attorney, 300 Corporate Place, Rocky HIll, COnn. 06067. on this day of June 20, 2006

Charlie J. Mcclendon
900 HighLand Ave.
Cheshire Conn. 06410

37