UNITED STATES DISTRICT COURT

DISTIRCT OF CONNECTICUT

CHARLIE JU. McCLENDON

The Petitioner's


V.


STATE OF CONECTICUT ATTORNEY

GENERAL, RICHARD BLUMENTHAL,

COMMISSIONER OF CORRECTIONAL,

THERAZ C. LANTZ.


CIVIL NO.

3-01-CV-1490-(JBA)


Date.

August 29, 2007.


MEMORANDUM OF LAW IN OPPOSITION TO THE

RESPONDENT'S BRIEF

ARGUMENT

THE TRIAL COURT, THE APPELLATE COURT AND THE STATE SUPREME COURT DECISION RESULTED IN CONTRARY TO FEDERAL ESTABLISHED LAW. To Suppressed on The Grounds The Search And Search And Serizure Warrant Authorizing The Line-Up And Voice Simple Of The Petitioner's And Identification Procedures Employed Was Unnecessary Suggestive.

The Respondent's Claim (The Connecticut Appellate Court analyzed the Petitioner's warrant claim under Article First, § 9 of the Constitution and determined that the warrant was supported by probable cause. The court explained that probable cause was established by (1) Darlene Hale's detailed description of the assailant and (2) The corroborating identification, through the composite drawing, made by another witness. Probable cause was not extinguished by the fact that Hale's was unable to identify the killer when he was not wearing eyeglasses and without hearing his voice. Mcclendon, 45 Conn. App. at 665. The Connecticut Supreme Court concluded, for materially the same reasons, that the affidavit "presanted a factual basis to support the Court's conclusion that probable cause for the line-up and voice sample existed" Mcclendon, 248 Conn. at 580-81.)

The Respondent's further stated

1

The Appellate Court also found the identification percedures reliable, stating:  We are not persuaded by the defender's argument that the identification procedure was unnecessarily suggestive because he was the only person in the line-up whom Hale had seen before. The recurrent use of a defendant's photo- graph in successive arrays... is not persumptively suggestive. Although Hale was shown photographs of the defendent's in arrays on several occaisions, she had never identified the defendent's from those arrays. Additionally, Hale maintained that she had closely observed the defendent when he requested an employment application and heard him speak several time. She could not, however, identify him without seeing a line-up composed of person wearing glasses and without hearing his voice.  The trail Court, therefore, could reasonably conclude that the identification procedure was not unnecessarily suggestive.

The defendent next contends that, even if the procedures was not unnecessarily suggestive, the identification was unrelia- ble under the totality of circumstance. The Constitutional test for reliability requires the trial Court to consider the opport- unity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the prior desription of the criminal, the level of certainty de- monstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

In this case, Hale had ample opportunity to see and to hear the robber. She had high degree of attention and was face-to- face with the defendent and her description of the perpetrator at the time of the incident was quite detailed. Hale also de- monstrated certainty in identifiying the defendent at the line-

up. Furthermore, we cannot assume that the two year period be-
tween the identification and Hale's viewing of the defendent
was so long as to render her identification unreliable. Under
those cirumstance, the trial Court properly concluded that the
identification procedures was not so suggestive and unreliable
as to violate the defendent's right to due process.

   Mcclendon. 45 Conn. App. At 665-66 (internal quotes and cita-
tions omitted)


   1). **The Respondent's first claim is the Petitioner's search
and serizure warrant  are not cognizable in this action and,
further even if cognizable, the warrant was supported by probable
cause.** At trial, the Petitioner's sought to suppress as "fruits
of an illegal search and serizure any photographs and/or video
or audio tape recording of [his] person along with any corporeal
identification of [him] made as a result of a line-up condcted
on September 15, 1989." The Respondent's is strenuously trying
too mislead this Court's, stating,  " he Petitioner's claim
is not cognizable in this action because it was not fairly pre-
sented as a Federal Constitutional issue to Connecticut Court
and because it is barred by the United States Supreme decision
in <u>Stone v. Powell,</u> 428 U.S. 465, 494-95, 96 s. Ct 3037, 3052-
53 (1976). Further, even if the claim were cognizuable, relief
is barred by <u>Williams,</u> Supra, insofar as the State Courts' de-
termination that the warrant was issued upon probable cause
was not contrary to or an unreasonable application of clearly
established Federal Law. "   The record is very clear on this
issue, The trial transcripts, The Appellate Court brief, The
certification to the State Supreme Court and its brief, is fairly
persented as a Federal Constitutional issue. As the Respondent's dn

stated in they Memorandum, " The Appellate Court, and The State Supreme Court analyzed the Petitioner's claims under the State Constitution only. "

The record is and was very clear for the Appellate Court and the State Supreme Court, as well as this Court's to view. The Petitioner's brief to the Appellate Court and the State Supreme Court, was also seeking to view this issue under Federal Historical Constitutional Factual Finding, **Sumner v. Mata,** 455 U.S. 591, at 597.

The Respondent's claim, " The Petitioner's made olny perpheral "passing" references to Federal Constitution " This Court's have already deemed this issue exhausted.

In reference to **Stone v. Powell,** 428 U.S. 465, at 494-95. The Fourth Amendent to the Federal Constitution, " a fair and full opportunity to litigate " the issue "Fruits of illegal search and serizure " was not applied in this case by the Appellate Court and the State Supreme, in **Williams v. Taylor 529 U.S.** 362, this constitute Unreasonable application of clearly established Federal law. According to **Williams,** a state court's decision is contrary to Federal Constitutional law where it- (a) fail to apply a controlling USSC case, or (b) if it apply a controlling USSC case to an indistinggishable set of facts but reaches the opposite result. A state court decision involves an unreasonable application of Federal law if it either (1) correctly identifies a controlling USSC case but then applies it to a new set of facts in an unreasonable manner; or (2) applie (or fails to apply) a controlling USSC case to a new case in an unreasonable way.

The Respondent's also claim. "The totality of the circumstances surrounding identification of the Petitioner's as the perpetrator produced a reliable identification"/ "Petitoner's claim fail because Connecticut Court's determination that the identification procedures were not unnecessarily suggestive neither contravence nor unreasonable applies clearly established Federal law".

ON direct appeal to the Connecticut Appellate Court, and the Supreme Court, (The "suggestiveness" issue was not among those question certified for review bt the Connecticut Supreme Court) the Petitioner's argued as he does here, that the identification procedures were unnecessarily suggestive. The Petitioner's was the only person in the line-up who Hale seen before, (in photographic arrays she have been shown over the course of two years) and that the identification was unreliable under the circumstances.

The Due Process Clause of the Fifth and Fourteen Amendment forbid a line-up that is unnecessarily suggestive and conducive to irrparable mistake identification. **Kirby v. Lllinois,** 405 U.S. 682, 691, 92. s Ct. 1877, 1883 (1972), **citing Stovall v. Denno,** 388 U.S. 293, 87 s. Ct 1967 (1967); **Foster v. California**, 394 U.S. 440, 89 s. Ct 1127. (1969). Whether such a violation has occurred  depends uponds the totality of the circumstances surrounding the identification.  **Stovall,** 388 U.S. at 302.

The corruptive effect of a suggestive identification is to be weighed agaist factors of reliability, including the

6

opportunity of the witness to view the criminal at the time
of the crime, the witness's degree of attention, the accuracy
of the witness's prior decription of the criminal, the leval
of certainty demonstrated at the confronation, and the time
between the crime and the confrontation. ld. if, once all of
these and other circumstance attendant to the identification
are considered. it can be said that identification procedures
yielded a "very substantial likeihood of irreparable misidenti-
fication," then a violation of Constitutional dimension has
occurred. ld. at 116, quoting Simmons v. U.S., 390 U.S. 377,
384, 88 s. Ct. 967, 971 (1968).


       Here, as in Simmons, a serious felony had occurred
the perpetrator still at large with respect to the subject crime,
however. Hale only saw what she thought maybe the perpetrator
for only 30 second to a minute. (she had her head turn throughout
the initiate incident) Unlike Simmons, Hale was made aware a
suspect was arrested on unrelated charges, she viewed countless
photographs arrays with the petitioner's in them over the course
of two years before she made her identification. In the line-
up procedure her was shown photographs array immediatedly before
the line-up, and in the actual line-up proceeding, Hale was
first shown a group of mens without eyeglasses, Hale immediatedly
identified the petitioner's and mystically his voice, which
was stated was not distinctive.


       In Hale's testimony, she stated "She would have identi-
fied the petitioner's with or with the eyeglasses."

In conclusion on this issue, the Petitioner's ask this Court's to grant him a hearing, and relief. From the record it's very clear, the Trial Court's, Appellate Court's, and the Supreme Court's, decision was Contrary to Federal established law. There is nothing in the search and serizure warrant that cearly established probable cause. The police had the same information from Hale on August 11, 1987 to September 15, 1989. The Petitioner's became an immediated suspect two days after the incident. From the record Hale was pursured. After two years of pursure Hale idenified the Petitioner's the record is clear on this.

From Hale's 1987 and 1989 Statements, the information in the search and serizure affidavit, the infromation in the arrest warrant and the Petitioner's whom two days after the incident immediately became the prime suspect, should have place the Petitioner's then in a line-up, not two years later. But because the information Hale gave the police about the Petitioner's at her home on August 14, 1987, the same information she gave to two Public Defender Investigator on December 8, 1987, the police could not secure a warrant. The record is very clear on this.

Hale had been shown over the course of two years 5 to 6 photographic arrays, each time the Petitioner's photo's was in there. She was shown photos the week leading up to the line-up. The initiate day of the line-up she was shown photos, which the Petitioner's was in there. The Petitioner's ask this Court's to grant him a hearing and relief on the grounds that, the Trial Court, Appellate Court and the Supreme Court

dicision was in fact Contrary to established Federal law, as
well as the dicision was unreasonable application of Federal
established law.


   **2). The Respondent's Second Claim Is:** "The Petitioner's
Claim Regarding Suppression Of An Exculpatory Police Report
At The Time Of His Probable Cause Hearing does Not Implicate
Federal Law."


   The Respondent's stated, in the Petitioner's direct
appeal, he raised no claim that the Report was Suppressed at
the time of his criminal trial, and the Petitioner's claim only
challenges the results of the 1989 Probable Cause Hearing, and
that the Petitoner's has no rights under the Federal Constitution
to a Probable Cause Hearing.


   Once again the Respondent's is strenuously trying
to mislead this Court's. On November 25, 1992. After 5 days
into the Petitioner's trial, the State's handed-over a Police
Report, that was authored by Detective Ronald Faggaini. It is
very clear form the record this Police was Suppressed by the
Prosecutor.


   On November 30, 1992, a motion for a mistrial was
filed in Petitioner's criminal trial. A hearing was granted.
At that hearing the Petitioner's claim as he did at trial,
Appellate Court, Supreme Court and now at this Court's, the
Police Report was Suppressed.

appied.                          **9**

The mistrial was lengthy. The Petitioner's claimed the police
reportwas exculpatory and material. This was argued under the
Federal Constitution. **Brady v. Maryland,** 373 U.S 83. 83 S. Ct
1194. 10 L.ed 2d 215 (1963).


        The Petitioner's notonly requested a new Probable
Cause Hearing, also filed a motion for a new trial on this issue.
The Petitioner's claim in his brief to the Appellate Court "The
State's failure to disclosed this exculpatory information denied
the the defendent's a fair trial under U.S. amend 5. 6. 14."


        The Appellate Court was purposely mislead by the State'
Court, stateding, the Petitioner's already had this <u>Faggaini
Police Report,</u> were at the November 19, 1992 Suppressing Hearing
he refer to Hale as the <u>Faggaini Report</u>. The Respondent's also
as well strenuously trying to mislead this Court's with the
same arguement.


        The record is very clear for this Court's to reviewed
the entire trial transcripts and documents on this issue.
The Petitioner's was referance to the <u>Search and Serizure Warrant
Faggaini Report</u> on November 19, 1992. The record is very clear
on this . The State's Court's know this, as well as the Respon-
dent's


        The Appellate Court dicision, to the Federal Constitu-
tion, the **Brady v. Maryland,** issue, the ruling was unreasonable
applied.

The Suppression of this Figgaini Police Report was exculpatory and very materail to the Petitioner's. If in fact, had this Faggaini Police Report been timely disclosed, there would never had been a trial. From this report, it, stated, Hale, was made awaer a suspect concernding said incident, was in costody on unrelated charges, and that she had nothing to fear. Its also Stated, Hale's stated, it was just an **Assumption** on her part that the person whom came in for the application, was the same person whom perpetrated this crime.

The probable cause hearing and most of the pretrial hearing was done some three years early before this disclosed by the State's

The Petitioner's claim this at as a brady issue, in his brief to the Appellate Court. The Supreme Court refused to hear this issue. The Petitioner's aks this Court's to grant him a hearing and relief. Also to find the State's Courts di-cision was unreasonable applied to Federal well established law.

**3). The Respondent's Third claim is.** "Connecticut Courts Reasonably Determined that the "Exculpatory" Police Report Was Not Sufficiently Reliable To Be Admitted Under The "Catch-All" Hearsay Exception."/ "The Petitioner's Did Not Fairly Pre-sent a Constitutional Basis For His Hearsay Exception Claim In Connecticut Courts And It Has Therefore Not Been Exhausted."

**The Respondent's Also Claim.** "Even If The Petitioner's Hearsay Exception Claim Were Reviewable, The Connecticut Courts' Determination Was Not Contrary To Nor An Unreasonable Application Of Clearly Established Federal Law"

AS the Petitoner's stated previously, the Respondent's is trying to mislead this Court's. After the Petitioner's motion based on the State's withholding the Faggaini Report deined, the Petitioner's offered the Report as a full exhibit under the Residual Exception to the Hearsay Rule. The Trial Court's sustained the State's objection to its admission on the ground that the Report was "more likely misleading than accurate" and that "there is absolutely nothing of any special trustworthiness with this undated Report...."

In the Appellate Court brief and the Supreme Court Brief, the Petitioner's additioally challenged this issue under The Federal Constitution U.S. 6. 14. amend "The right to conforont witnesses and present a defense, **Chamber v. Mississippi,** 410 U.S. 284 at 294 (1973). also **Washington v. Texas,** 388 U.S. 14.

It aws the Appellate Court that challenges this issue under the evidentiary ruling, and that the Supreme Couer agreed.

The Appellate Court, was unresonable applied form what the Petitioner's asking for. And the Supreme Court, ruling was COntrary to well established law. The Petitioner's ask this Court's to grant him a hearing and relief, based on the Appellate Court was unreasonable applied Federal law. And the

Supreme Court, ruling was Contrary to well established Federal
law.

   The Respondent's Four Claim Is. "Connecticut Courts'
Determination That THe Petitioner's Received Effective Assistance
Of Counsel Neither Contravened NOr Was Unreasonable Application
Of Clearly Established Federal Law"

   The Petitioner's trial Counsels "susuan Story" and
"M. Fred Decaprio" representation felled below an object standard
of reasonableness.  The Respondent's is very slow in thinking
this Court's will be naive on this issue. The Respondent's in
thier August 13, 2007. Memorandum, seem to have a lack of chal-
lenging on this issue, and for good reason.

   The Petitioner's aws arrested on August, 11, 1987.
for unrelated charges the Petitioner's was question about the
said incident, at that point the Petitioner's became the prime
suspect of the C&K incident. Over the next few months, the police
department continue to try and see and interview the Petitioner's
The Petitioner's became frustrated with the police accusation.
The Petitioner's then contrated his then attorney, Susuan Story,
On December 8, 1987. at the Petitioner's request, attorney,
Susuan Story, sent out two investigator from her office, (Imar
Grimes and Ellen Knight) to investigat and interview Darlene
Hale. Both spoke to Hale, and question her about the C&K incident
Hale stated to the two investigators

"She had spoke to Det, Omiecinski, at her home on August 14,
1987, concerning the C&K incident, she was then shown a photo
of the suspect who Det, Omiecinski think that is resonable (the-
Petitioner's)" Hale, stated, "The person Det, Omiecinski,
name was Charlie Mcc.." She Hale struggled with the last name.
At that point the tow investigators inform Hale, they have a
client name Charlie Mcclendon, at that point Hale, interrupted
them and stated, "Thats the name and person Det, Omiecinski,
gave her and shown her a photo of" Hale stated, "She was shown
a photo of this Charlie Mcclendon (The Petitioner's) and he
was not deffinintely the culprit" Hale stated, "She stated
this to Det, Omiecinski,, the night at her home on August 14,
1987." Hale stated, "She informed Det, Omiecniski, she (Hale)
know this Charlie Mcclendon any way because he had had filled
out a application before, and use to check on it, and that he
(The Petitioner's) has a cusin by the name James Dennis, who
she (Hale ) work with at C&K. Hale stated, "She had enough
contact with Charlie Mcclendon, (The Petitioner's) to know what
he look like, and that he (The Petition's) was not the person
who came in on August 11, 1987, and ask for the job application
at C&K" Hale stated, "Over the course of several months Det,
Omiecniski, tryed to make her feel like it was her fault they
(Cop) haven't made an arrest" Hale stated, "Det, Omiecniski,
stated to her at one time, this Charlie Mcclendon, (The Petit-
ioner's) had fourteen robberies cases, and one of those cases
he shot an old man in the leg with the same gun he used to kill
these people, but because you (Hale) wont make an identification
on him, we (Cop) cant arrest him, although we (Cop) think he

did it, but we (cop) only have circumstantail evidence" Hale
stated, "Det, Omiecniski, told her (Hale) he really wanted to
make an arrest on this one , wanted to make an example of this
Charlie Mcclendon (The Petitioner's) want him to die in the
electeric chair" Hale stated, "None of the photos she (Hale)
was was shown was the right person" Hale stated, "Det, ---
Omiecniski, constancely pursure her (Hale) over the months,
to try and make an identification on this Charlie Mcclendon,
(The Petitioner's) making her (Hale) feel like it was her (Hale)
fault, an arrest wasn't made" At that point both investigators
made it very clear was they talking about the same Charlie -
Mcclendon,  Hale stated, "Yes, I was shown a photo of this -
suspect Charlie Mcclendon (The Petitioner's) By Det, Omiecniski,
and I inform him he (The Petitioner's) was not the person who
came in for the job application right before the robber,I had
enough contact with  Charlie Mcclendon (The Petitioner's) to
know what he (The Petitioner's) look like, he had filled out
an application before, and had check on it several time, and
I know his cusin by the name Jame Dennis, who I (Hale) work
with at C&K."


        The Petitioner's was Denied his Six and Fourteen Fed-
eral Constitution Rights, to Effective Assistance of Counsel.

            As the Petitioner's demonstrate to the Habeas Court's,
the Appellate Court, and now this Court in hid June 20, 2006.
memorandum

Petitioner's Trial Counselors, performance was deficent. The case was Capital Felony, the Central issued was the Petitioner's identity. The Trial Counsels had undisputable evidence concerning the Petitioner's identity. Hale inform Trial Counsels owned investigators two years before Hale's September 15, 1989, Statement, and line-up identification that she know the Petitioner's and his cusin James dennis. Boths Trial Counsels refused to called they own investigators, and the Petitioner's relative James Dennis as witness. THe Petitioner's also had requested his Trial Counsels to call and investigate a charlie Oueiroge, Whom had stated, "He had seem the petitioner's before in the vicinity of C&K recently, but he (The Petitioner's) was not the guy he saw on August 11, 1987, in fornt of C&K." The Trial Counsels stated, "All the information in the statement Hale gave to the investigator was no good, and they fear they would be calling her a lier" A witness by the name of Minnie Thompson who testified for the Petitioner's, after she had protest outside of the Court's house to Petitioner's Trial Counsels, "That the Police shown her a photo of the Petitioner, and kept showning her it, and asking are you sure this is not the guy you saw walking down your street on August 11, 1987, after you heard the shooting stop" THe witness had to protest for the Petitioner's to testified. Trial Counsel had undisputable evidence to help the Petitioner's, but choos not too. This was a very cold and calculated move by the Trial Counsels, knowing the Petitioner's was facing execution. No lawery would had perform like this under no circumstance. Trial Counsels purposely misrepersented the Petitioner's. The record is very clear on this issue.

Under **Berryman v. Motion**, 100 F. 3 1089. **Workman v. Tate,** 957 F.2d 1339. **Harris v. Reed,** 894 F.2d 871. Trial Counsels was most definitely ineffective.


The Petitioner's ask this Court's to grant the Petitioner's a hearing and relief, also find the Appellate Court dicision was unreasonable applied to the Petitioner's case.


**The Respondent's Fifth Claim is.** "The Petitioner's Claim That The State Habeas Court Abused its Discretion is not Cognizable in this Action"

The Habeas Court's, and the Appellate Court was unreasonable and contrary to Federal Establised Law, **Lozada v. Deens, 498. U.S. 430. Barefoot v. Estelle, 463 U.S. 880.** As the Petitioner's stated in the above claim of Effective Assistance of Counsel. The Habeas Court ruling has no grounds to stand on, once this Court's review these issue.


The Petitioner's seeking a new trial on this issue, and all the issues, the Petitioner seek a hearing on the issues at hand. THe Court, this Court's need to openly review this case by conducting a hearing.

Truely Submitted

*Charlie J. Mcclendon* (signature)

Charlie J. Mcclendon
1153 East Street South
Macdougall C.I.
Suffield, Conn. 06080.

## CERTIFICATION

Petitioner's cerifies a true cope of this document has been
mailed to the Respondent's Counsels, Micheal E. O'Hare, and
Micheal J. Proto, Esq. Assistance State Attorney, 300 Corporate
Place, Rocky Hill, Conn. 06067. On this day of August 29, 2007.

*Charlie J. Mclendon* (signature)

Charlie J. Mclendon
1153 East Street South
Macdougall C.I.
Suffield, Conn. 06080.

M I N N I E   T H O M P S O N, of 23 Brook Street, Hartford, Connecticut, having been called as a witness, was duly sworn by the clerk and testified as follows:

DIRECT EXAMINATION BY MR. DECAPRIO:

Q    Good afternoon, Mr. Thompson.

A    Hi.

Q    Your address is 23 Brook Street in Hartford?

A    Yes, it is.

Q    How long have you lived at that address?

A    Twelve years.

Q    And are you employed?

A    Yes.

Q    Where do you work?

A    American Airlines.

Q    What do you do for them?

A    I'm a customer service representative.

Q    All right.  And I take it you lived at 23 Brook Street back in August of 1987?

A    Yes.

Q    Do you recall an incident back then when there was a shooting at C & K Moving Company?

A    Yes.

Q    And where is your house with respect to C & K?

A    The street is on -- C & K is on Bedford Street, it's a street that runs this way.  Brook Street comes this way.

I live on Brook Street.

    Q    All right.  Did you say it's Bedford?

    A    Yes.

    Q    Are you sure about that?

    A    Liberty, I'm sorry.  Bedford is the corner here. Liberty Street is actually the street where the moving company was on.  And then Brook Street is off of Liberty.  I lived between Liberty and Albany.

    Q    All right.  How far from the moving company would you say is your house?

    A    Well, from my house to the corner of Liberty is about a quarter of a block.  And the moving company was to the right on Liberty, I guess about two houses over.

    Q    Do you know where Walnut Street is?

    A    Yes.

    Q    And do you know whether or not the moving company was on Walnut Street?

        MR. MALONE:  Objection, Your Honor.

        THE WITNESS:  Well, it wasn't on the corner.

        MR. MALONE:  I object to that question.

        THE COURT:  When someone says object you have to stop.

        THE WITNESS:  Okay.

        MR. MALONE:  It's a leading question, Your Honor.

        THE COURT:  Do you claim it?

        MR. DECAPRIO:  Yes, I do, Your Honor.  It may be technically leading but there's obviously the need

for it.

THE COURT:  I'll permit it.

BY MR. DECAPRIO:  (continuing)

A     Walnut Street is another street that -- the school is on Walnut Street, so the moving company was not on Walnut Street because it's not on the corner.  It would have to have been on the corner to have been on Walnut Street.

Q     That's fine.  But are you aware of the location of the C & K Moving Company?

A     Yes.

Q     If you were to walk from C & K Moving Company to your house do you know how long it would take?

A     Less than a minute.

Q     Now, do you remember being home on the afternoon that this incident -- where the shooting and the two people were killed?

A     Yes.

Q     And I want to ask you did you see anyone -- first of all, did you hear anything that afternoon that attracted your attention?

A     Yes.

Q     What did you hear?

A     I heard gunshots.

Q     And do you remember at all what time it was?

A     It was in the afternoon, I would say.  It was a summer day.  We were out.

Q     Where were you?

A    I was in the house when I heard the shots, because I can hear everything from where I live because my windows were open.  And I came out on my stoop when I heard it.

Q    And your stoop is your front porch?

A    Yes.

Q    All right.  And immediately after hearing the shots did you see anyone?

A    Not immediately after, about one or two minutes after.

Q    Okay.  And did you see a person on your street?

A    Yes.

Q    And was it male or female?

A    Male.

Q    And what was the male person doing?

A    He was walking down my street, coming from Liberty Street down my street on Brook Street.  And what attracted me was because I've had burglaries in my house and he looked sort of shifty, so I watched him.

Q    All right  Did he do anything that you saw?  Withdrawn.  How was he walking, Ms. Thompson?

A    He was walking and looking around, sort of like this as if he was looking back to see if anybody was behind him.

Q    And by this you're looking back over both of your shoulders?

A    Yes.

Q    Did you get a good look at the individual?

A    Yes.

Q    And can you describe him for us?